Syllabus.

111 462
22a 303
22a 655
111 462
162 603
57a 495
111 462
185 280
111 462
107a 7140

ROBERT E. JENKINS, Assignee,

*v.*

THE INTERNATIONAL BANK *et al.*

*Filed at Ottawa November 17, 1884.*

1. FORMER ADJUDICATION—*identity of issues—necessity therefor—and whether such identity exists.* Where precisely the same issues are tendered in two different suits, and litigated, a finding as to any such issue in one suit must be regarded as final in the other, and such issue can not be re-tried.

2. So where a party has had a full accounting as to the state of his account with another, although in a suit involving the rights of others as well as his own, and a balance is struck, this may be set up by the complainant, in another suit by a supplemental bill, as a bar to a cross-bill seeking another statement of the same account.

3. SAME—*in the particular case.* A bank brought suit to foreclose a mortgage given to secure a $10,000 note which W. had pledged to the bank as a collateral security for a particular loan, but under a special agreement that all collaterals, after payment of the particular loans, should stand as security for any other indebtedness of W. to the bank, and a subsequent purchaser of the premises mortgaged to secure the $10,000, set up that the note of $10,000 had been paid before he bought, and the question then arose as to how much W. owed the bank on general account, for which this note stood pledged at the time of the purchase, W. being a party, and the court found there was due the bank from W. $10,000: *Held,* that in a subsequent suit between the bank and W., or his assignee, the decree in the prior suit was not conclusive on the bank that W. owed it only such sum.

4. SAME—*effect of certain stipulations as waiving the right to rely upon a prior adjudication.* During the progress of litigation between a bank and one of its customers and its debtor, several stipulations were made as to charges to be made against the bank on account of collaterals taken for the surrender of certain principal notes, providing that neither party should thereby concede any rights: *Held,* such stipulations did not preclude the bank from setting up in defence to a cross-bill for an account, a former decree stating the account between the parties.

5. SAME—*error in prior decree—its effect.* The rule of *res judicata* or estoppel by a judgment upon the same point, when there is no want of jurisdiction, operates equally whether the judgment be erroneous or not. A decree complete in itself, without any omission to be supplied to make it effectual, however erroneous, may be set up in bar of a bill seeking to re-litigate the matters therein decided.

6. SAME—*limitation—as to suit in which an assignee in bankruptcy is a party—effect as to conclusiveness of prior decree.* Section 5057 of the Revised Statutes of the United States, providing that "no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee," does not prevent a party from setting up a former decree between him and the bankrupt in bar of a cross-bill seeking an account of the same identical matters, even after the lapse of five years from the adjudication in bankruptcy; and when such defence has ripened after bill filed, and cross-bill and answers thereto, the complainant may set up such defence by a supplemental bill.

7. PLEDGE—*whether affected by change in form, or evidence of debt.* Where collaterals are pledged as security for the payment of the pledgor's notes, they may be held until the indebtedness secured is paid. If the notes are merged in a judgment or decree, the collaterals will stand security for the payment of the judgment or decree, the same as for the notes.

8. ACCOUNTING—*of a re-adjustment after a decree settling an account—basis of a new accounting.* After a decree finding the state of accounts between a bank and a defendant, rendered in a suit to which they were parties, on another bill between the bank and defendant, involving other rights and affecting other parties, a stipulation was entered into by the defendant's assignee in bankruptcy and the bank and three other persons, that the assignee should surrender to the bank and the other three persons the collaterals held by him to secure the payment of six principal notes of his assignor, only one of which was owned by the bank, and the other five were held by the other parties, and it was agreed that these collaterals should be taken in satisfaction of the six principal notes, and their surrender treated as enforced payment of the latter notes. In stating the account subsequent to the date of the prior decree, the bank was charged with but one of these six notes: *Held,* no error not to charge the bank with all, as it did not appear that they were all included in the former stated account.

9. SAME—*sale on foreclosure—subsequent reversal of the decree—subsequent accounting between the debtor and one of several creditors for whose benefit the sale was made.* Where real estate is bid in at a foreclosure sale by one for the benefit of the several creditors in interest, and the decree under which the sale was made is afterward reversed, and it further appears that no title passed or could pass by such sale, on a subsequent accounting by one of the creditors for whom the purchase was made and the debtor owing the debt in the decree, there is no error in refusing to charge such creditor with his share of the price at which the property was sold.

10. CROSS-BILL—*whether necessary—as to matters arising after issues formed.* In respect to a matter of defence which arises after the cause is at

issue, it is laid down that the defendant can not avail himself of the defence by plea or answer, but must make the same the subject of a cross-bill. And so when the complainant would assert such matter of defence to a cross-bill, the proper mode of presenting the same is by supplemental bill.

11. INJUNCTION—*effect of appeal or writ of error, as to a continuation of an injunction.* Where an injunction has been dissolved on final hearing, an appeal or writ of error does not continue the injunction in force unless so ordered.

12. TRUST DEED—*sale of collaterals—omission of creditor to purchase—effect on trustee's power to sell.* Where a debtor pledges as collateral security certain notes of his, secured by deeds of trust, to secure his own debt to the pledgee, the latter or his assignee may have a foreclosure of the trust deed without first purchasing such collaterals at a sale made of them. The source of the trustee's power to sell is the trust deeds, and does not depend upon a sale of the notes secured after they are pledged.

13. SAME—*concurrent remedies by creditor in respect to the collaterals secured by trust deed.* A creditor holding other notes as collateral security for the payment of his note has three remedies. He may file his bill to have the collaterals sold for the payment of the principal indebtedness, or he may bring suit upon the collaterals themselves, or collect the same by a sale of property conveyed in trust to secure them; and the pursuit of either of these remedies is no bar to another.

14. SAME—*sale under trust deed pending suit to ascertain indebtedness.* Where a creditor has notes of his debtor pledged as collateral security, which are secured by trust deed upon real estate, he may, after his debt matures and the collaterals fall due, have the trust property in the trust deed sold, notwithstanding the pendency of a suit between him and his debtor to determine whether the indebtedness had not been paid. But the trustee's sale, pending such litigation, is subject to whatever decree may be rendered therein. If it should be found there was nothing due of the principal indebtedness for which the collaterals were pledged, the trustee's sale would be invalid.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

A bill in chancery was filed February 17, 1875, in the Cook county circuit court, by the International Bank, against Samuel J. Walker and other persons, to foreclose and sell certain collateral securities which had been pledged by Walker to the bank to secure the payment of principal notes of various dates made by Walker to the bank, some twenty-two of

which were still held by it, and about ten others transferred to the other parties to the suit. The prayer of the bill was, that a decree might be entered fixing and establishing the amount of indebtedness due the bank from Walker, and for a sale of the collaterals so pledged, and the application of the proceeds to the payment of such indebtedness. Walker answered, alleging that a large amount of usurious interest entered into and formed a part of the alleged indebtedness, and insisting that an account be taken between the parties, and that such usurious interest be applied toward the satisfaction of such indebtedness, and that the collaterals be surrendered. Walker also filed a cross-bill making the same allegations, and praying for an account, and the application of such usurious interest, and for a surrender of the collaterals.

July 6, 1877, the circuit court made an interlocutory decree in the cause, which denied the right to interpose the defence of usury, and directed an account to be taken of what was due on the principal notes held by the bank, excluding the defence of usury and of usurious payments of interest. In pursuance of an account taken as thus directed, dated January 15, 1878, a final decree was entered on April 25, 1878, finding the amount due the bank from Walker on the notes held by it to be, on January 15, 1878, $172,474, and directing a sale of the collaterals held by the bank to satisfy it. April 26, 1878, Walker went into bankruptcy, and July 31, 1878, Jenkins, the appellant, received the deed as his assignee in bankruptcy. The decree of April 25, 1878, was by this court, at its March term, 1881, in *Jenkins* v. *International Bank et al.* 97 Ill. 568, reversed, on the ground that the direction to the master, in the order of reference, not to consider the question of usurious payments of interest upon any of the notes, was erroneous. The collaterals so sought to be sold had been specifically pledged by Walker to the bank,— each to secure a particular note. The bank also held an agreement from Walker that each of the collaterals, though

30—111 ILL.

specifically pledged as security for a specific principal note, should also, after the satisfaction of such principal note, be held as security for Walker's entire indebtedness to the bank, if any surplus remained which could be so applied after the satisfaction of such particular note.

On March 11, 1874, George Wilshire and others filed their bill of complaint against the International Bank, David Frey, Samuel J. Walker, and others, alleging that they had purchased of Walker certain premises, and setting out that Frey claimed to own a certain mortgage upon the same, executed by Walker prior to their purchase, which Frey obtained from the bank, but that there was nothing due upon it, and praying that the same might be surrendered and cancelled. Frey filed a cross-bill, setting up his principal note and the collateral note and security so executed by Walker to the bank, alleging that he had bought said principal note of the bank for full value, and praying for the foreclosure of the mortgage and sale of the premises. The bank also filed its cross-bill against Wilshire, Frey, Walker, and others, setting up its general collateral agreement above referred to, alleging its right, by virtue thereof, to any surplus that might remain after the satisfaction of the indebtedness so due to Frey on said principal note which had been sold by it to Frey, not exceeding the amount due on the collateral note. The said general collateral agreement provided that the bank should have the benefit of said surplus, though it had sold such principal note to a third party. The bank, in its cross-bill, set up its entire indebtedness so due to it from Walker in the same way and with the same particularity that it had set up the same in the bill in this cause now under consideration, alleging that the notes were due and payable, and asking that it might have any surplus applied to the payment of such indebtedness after the satisfaction of the amount due to Frey. Walker answered that cross-bill in the same way, and alleging the same facts that he had alleged in answer to

the bill in this cause. He also filed a cross-bill therein, setting up the same facts that he had set up in the cross-bill filed in this cause, and prayed for an account between himself and the bank, and for the application of all usurious interest in satisfaction of his indebtedness to the bank, and for a return of the bank's collaterals, just as he had done in this case by his cross-bill.

On February 28, 1878, a decree was entered in the Wilshire suit, finding the amount due from Walker to the bank to be the sum of $172,474. That decree stands in full force and effect, and over five years have elapsed since the entry of the same. The case at bar having been redocketed in the circuit court after the reversal of the first decree, on November 26, 1883, by leave of court the complainant, the International Bank, filed a supplemental bill, setting up the said proceedings, pleadings and decree in the Wilshire suit as a former adjudication, and in bar to any further proceedings by Jenkins, assignee, for an account under his cross-bill herein, and as a conclusive adjudication of the amount due the bank upon the evidence of indebtedness set out in its original bill herein. The circuit court held the said former adjudication in the Wilshire suit a bar to any further account as to what was then due, and found the amount due upon the principal notes set out in the bill and offered in evidence, to be the sum of $172,474 on January 15, 1878, as determined by the decree in the Wilshire suit. After the allowance of subsequent collections, the court found the amount due at the time of the decree to be $143,630.22, and rendered a decree for a sale of the collateral securities to satisfy said sum. This decree was affirmed by the Appellate Court for the First District, and the assignee appeals to this court.

Mr. W. T. BURGESS, for the appellant.

Messrs. ROSENTHAL & PENCE, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is insisted the circuit court erred in holding the former adjudication in the Wilshire suit a bar to any further account as to what was in issue therein. The issues tendered by the bank to Walker, and by Walker to the bank, were precisely the same in that suit brought by Wilshire as they are in the case at bar. The main object in each suit was and is to ascertain the amount due from Walker to the bank. That was litigated and determined in the Wilshire suit, and we think the sum there found to be due must stand, and be taken as the amount then due, without being subject to be overhauled in this present suit. As was said in *Briscoe* v. *Lloyd*, 64 Ill. 33, litigation must have a termination, and when a matter has been in issue and the parties before the court, and an opportunity afforded to assert their rights, they must be held concluded from afterwards litigating them in another proceeding. We do not understand appellant's counsel as making question that the decree in the Wilshire suit would not, under the general rule, be a bar to any further accounting, or be binding as to the amount due, upon the principle of *res judicata*, but he seeks to avoid the effect of such former adjudication by the United States Statute of Limitations, and by the fact that the decree in the Wilshire suit is erroneous, and, as alleged, unjust and inequitable.

Section 5057 of the Revised Statutes of the United States provides, that "no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee." To make that statute applicable this view is presented: that as the supplemental bill filed in this cause by the bank on November 26, 1883, setting up the decree in the Wilshire suit,

prayed that it might be taken as a bar to any further proceeding by Jenkins under his cross-bill herein, and also that it might be taken as a sufficient adjudication of the amount due the bank, upon the evidence of indebtedness set out in the original bill, the decree was used in the court below for a two-fold purpose : First, as a plea in bar of the accounting; and second, as the cause of action in a supplemental bill taking the place of the cause of action set out in the original bill. It is this latter purpose, and the relief the party prays under it, which it is claimed entitles the assignee to set up in bar of that relief the statute. The decree in the Wilshire case having been rendered February 28, 1878, the deed to the assignee in bankruptcy made July 31, 1878, and the said supplemental bill having been filed November 26, 1883, it was more than two years thereafter.

We do not appreciate the distinction which would thus be taken in respect of a double purpose of the supplemental bill,—one purpose, as a plea in bar of the accounting, in which regard appellant's counsel says he does not apply the statute to the decree as *res judicata,* but that to its other purpose, as a substantive cause of action, as it is claimed to be, for the amount found due by the Wilshire decree, the Statute of Limitations does apply. Although the supplemental bill does in form set up the decree in the Wilshire suit in a double aspect,—first, as in bar of the cross-bill of Walker, and any further proceedings under it, and second, that such decree may be declared a sufficient adjudication of the amount due from Walker to the bank,—there was no ground for any such distinction. The bill of the bank prayed for establishing the amount of indebtedness due the bank from Walker, and an account would have had to have been taken under that, and Walker's answer setting up the payment of usurious interest. Walker's cross-bill did pray for an accounting, but the cross-bill was not needed for that,—its only necessity was to obtain the affirmative relief of having surrender of the collaterals

made to him. The barring of any further accounting would necessarily be to take the sum found by the Wilshire decree to be the amount due; and taking the Wilshire decree as fixing the amount due, would necessarily bar any further accounting previous thereto. We do not see any substantial distinction between the debarring of any further accounting and the taking of the Wilshire decree as conclusive of the amount due. We see no two-fold purpose in reality of the supplemental bill, but view it as having the single object of setting up the Wilshire decree as a former adjudication of the subject matter of the present suit. We regard the supplemental bill as essentially in the nature of a plea in bar to any further accounting in this suit,—that a party can not be called upon to account twice. It is analogous in operation to the plea of a former adjudication in bar of a pending suit upon the same subject. With respect to a matter of defence which arises after the cause is at issue, it is laid down that the defendant can not avail himself of the defence by plea or answer, but must make the same the subject of a cross-bill. (Story's Equity Pleading, sec. 393.) And so when the complainant in a bill would assert such matter of defence to a cross-bill, the proper mode we take to be by a supplemental bill.

The notes of Walker to the bank were introduced in evidence here, and there was no necessity of resort to the Wilshire decree as fixing the amount due the bank, the Wilshire decree being for just the amount of the notes. But it is said the notes were merged in the Wilshire decree, and no longer existed as a cause of action,—that the only cause of action afterward was upon the decree, and all right had to be asserted upon it as the cause of action, and hence the necessity of the supplemental bill making the decree the cause of action, and that against that, as the cause of action, the statute has run. We do not consider the supplemental bill as introducing a new cause of action. The indebtedness is the

same. The evidence of it at the time of filing the original bill in this case consisted in notes from Walker to the bank. The notes have since, as said, become merged in the Wilshire decree. There has been, then, a change in the evidence of the indebtedness,—from notes to a decree upon them; that is all. The collaterals sought to be foreclosed by sale of them were pledged for the payment of the indebtedness. A decree upon the notes, and the running of the Statute of Limitations against the decree, is not any payment of the indebtedness. The simple effect is, that the statute is a bar to a suit upon the decree. The collaterals may be held until the indebtedness is paid according to the terms of the pledge. We do not consider that there has been any new suit brought upon the decree, but that there is, under the supplemental bill, but assertion of the right to claim the benefit of the Wilshire decree as *res judicata,* and that the Statute of Limitations set up is not a bar to that right.

It is next asserted that the Wilshire decree is erroneous, inequitable and unjust on its face, and under the circumstances of the case one to which the circuit court should not have given effect. There was error in the Wilshire decree. There was the same erroneous order of reference in that case directing the master not to consider the question of payments of usurious interest that there had been in this case, and for the same error on account of which the first final decree in this case, of April 25, 1878, was reversed by this court, the decree in the Wilshire case was subject to be reversed; but it never was reversed. The rule of *res judicata* or estoppel by a judgment upon the same point, where there is no want of jurisdiction, has operation whether the judgment be erroneous or not. *Graceland Cemetery Co.* v. *The People,* 92 Ill. 619; *Case* v. *Beauregard,* 101 U. S. 692.

It is insisted that the principle which was applied in the cases of *Wadhams* v. *Gay,* 73 Ill. 415, and *Gay* v. *Parpart,* 106 U. S. 699, as to a court of equity declining to interfere to

supply aid for the enforcement of an unjust and inequitable decree, should obtain here in appellant's favor. The principle there acted on was, that where there was an incomplete decree, which was ineffective for want of the provision of any means for its execution, and a court of equity was called upon by an original bill to supply the omission, so as to render the decree effective, the court might well remain passive, and refuse its interposition where the decree was unjust and inequitable. Here the Wilshire decree is complete of itself,— entirely capable of full execution. Nothing is sought with respect to it except to show its existence as a decree, and insist upon the legal effect which attaches to its existence as a decree. We do not regard the case as at all coming within the principle referred to.

There were pending at the same time some nine of these so-called Walker suits, including the present and the Wilshire suit,—some brought by the International Bank; and in those brought by others the bank filed cross-bills, in which, as between Samuel J. Walker,—he being a party defendant in all of the suits to the bills or cross-bills of the bank,— and the International Bank, (a complainant in bills or cross-bills in all of them,) where precisely the same questions were involved, touching the same identical notes given in the course and springing out of the moneyed dealings between them, and where the principal question in each of them was, did Walker, by reason of these moneyed dealings, owe the bank anything, and if so, how much?—usury in these dealings being the defence set up by Walker in all the suits. In one of said suits, called the Brennock suit, there was a decree which, if he be overruled with respect to the Wilshire decree, appellant's counsel claims in favor of appellant, as having determined the amount due to the bank from Walker on the notes to be $10,000, and no more; and as this decree was the last-finding upon the matters in controversy, it is insisted upon, on behalf of appellant, as being conclusive of

the amount due from Walker to the bank. That bill in the Brennock case was filed by the International Bank, against John Brennock and others, the bill alleging that Walker owed the bank on a promissory note for $7500, bearing date September 26, 1870, which was renewed by another note for the same amount, dated March 14, 1873; that to secure such indebtedness, Walker, on September 26, 1870, pledged a note of $10,000, which was secured by a trust deed on block 15, etc.; that the bank, after the payment of the principal note, was entitled to the surplus, not exceeding the amount due upon such collateral note, and to have it applied on the other indebtedness due the bank from Walker, under its general collateral agreement, and alleged that Walker was indebted to the bank in an amount far exceeding the amount due upon said $10,000 collateral note; but the bill did not state the exact amount, or set out the evidence of the other indebtedness due from Walker to the bank. The bill also alleged that Brennock claimed title to said block 15, but that his interest was acquired subsequent to the pledge to the bank. Brennock's answer showed that he acquired title January 1, 1872, to said land, and claimed that the security held by the bank would not be effectual for any indebtedness of Walker to the bank which was created subsequent to Brennock's purchase. Walker filed a cross-bill, asking for an account. On the hearing, Walker's cross-bill was dismissed for want of equity, and the court confirmed the report of the master, which report showed that on January 15, 1878, Walker owed the bank $172,474, which is the same that the Wilshire decree found; and then the decree makes the special finding, "that there was due the bank on January 1, 1872, and has been due it ever since, from Samuel J. Walker, an amount of money exceeding the amount of $10,000, and that of the same identical indebtedness existing on January 1, 1872, for which the security aforesaid was pledged, there is now due the sum of $8532, and that complainant is entitled to have said premises

above described sold, and the proceeds applied in satisfaction of said indebtedness so due unto it on January 1, 1872."

It will thus be seen that the entire indebtedness of Walker to the bank was not in issue in that case. It was neither alleged in the bill nor sought by the bill to be established, nor did the decree assume to fix the entire indebtedness. The object sought was only to have established an amount of indebtedness sufficient to absorb the collateral of $10,000, and that existing at a particular time,—January 1, 1872; and so the bill only alleges an indebtedness in excess of $10,000, and the decree finds only an indebtedness to an amount exceeding $10,000 on January 1, 1872. To take that decree as establishing conclusively the amount of the entire indebtedness of Walker to the bank, and that amount $10,000, as appellant's counsel would construe it, would be, as appears to us, a manifest perversion of the character of the decree. Had the court undertaken to determine the question of the whole indebtedness, we may suppose it would have found it to have been $172,474 on January 15, 1878, as the master's report found it to be, and which report the court had confirmed.

Various objections are made by appellant's counsel to the statement of account made by the court subsequent to January 25, 1878,—the date of the Wilshire decree. Pending this suit, the assignee and the adverse parties in interest came to an agreement that the assignee should sell and they buy several of these collateral securities, and the consideration was that such sale should be in full satisfaction of the principal notes so held by the bank and others. The items of the account, and the amounts thereof, since January 15, 1878, claimed by either side, were agreed upon by them or proved, and they waived a reference to the master to state such account, and submitted, respectively, to the court a statement of account, each excepting to several items presented by the other. Three certain stipulations as to the

charges to be made against the bank on account of collaterals taken for the surrender of certain principal notes, were introduced in evidence. A point is made on them, that they contemplate a new account should be taken, and the bank should thereby be precluded from insisting upon the finding in the Wilshire decree. We do not think this point should be sustained, especially in view of the statement in the stipulation, "neither party intending hereby to concede any matter other than that by the surrender of the claim to the securities the said notes are paid."

Question is made as to the effect to be given to these stipulations. The first stipulation is in the Bauer suit, of date January 12, 1883, and respects six principal notes and their collaterals. One of these principal notes belonged to the bank, and the other five to Miller & Liebenstein, and Loebnitz. The stipulation was between all these named persons, the bank, and the assignee, and by it the bank, Miller, Liebenstein and Loebnitz accepted, in satisfaction of the six principal notes, the surrender from the assignee of the collateral securities accompanying the notes. In the account the bank is charged only with the one principal note which belonged to it, whereas it is insisted the bank should have been charged with the whole six notes. We can not see how this should be, unless all these six notes entered into and formed part of the Wilshire decree. But we do not understand that they did. The Wilshire decree fixed the amount of the indebtedness from Walker to the bank on January 15, 1878. These notes were made and due in 1873, and as only one of them belonged to the bank, it having sold the other five to the persons named, we suppose that decree to have embraced only that one of the notes which belonged to and was due the bank. We must suppose the other persons who held the other five notes, cancelled and surrendered them to the assignee when he gave up to them the collaterals. Stress is laid upon particular words which are used in other parts

of the stipulation, as, that the surrender of the collaterals should be "taken as if enforced cash payments of the face amounts of said notes had been made of each of them by Samuel J. Walker," and that in the taking of the account between "Walker and the bank" in any suit or suits, the face amounts should be charged, if otherwise proper to be allowed and charged. But there is the qualification, "neither party intending hereby to concede any matter other than that by the surrender of the claim to the securities the said notes are paid, as above provided for," so that it seems to amount to no more than that the surrender of the collaterals paid the notes.

The stipulation dated December 19, 1883, only deals with two principal notes which belonged to Bauer, and he takes the collateral securities accompanying them, in satisfaction of the notes. It is objected that the bank should have been charged with these two notes. The same remarks are applicable to this as to the preceding objection.

In one of these several Walker cases before spoken of,— that of *Bauer* v. *Walker et al.*, wherein the bank was a party, —there was a decree in favor of the complainant, and a sale had under it, under a security given by Walker, of lots 21 to 36, in block 10, Walker's dock addition, and the property was bought in at the master's sale by one Rosenberg, for the use of the parties in interest, under the decree, for $54,500, the bank's *pro rata* share of which was $21,232.82. The decree was afterwards reversed. Appellant's counsel insists the bank should have been charged in the account with this sum of $21,232.82; that the reversal of the decree did not make void the sale which had been made under it, but that the sale was only voidable at the election of the defendant; and that further, the assignee had filed a bill to set aside that sale, and the court refused to do so, so that appellant is entitled to demand that the bank should account for what it realized by that sale. It does appear that on June 27, 1881, after

the reversal of the decree in the Bauer case, a supplemental cross-bill was filed in the cause by the assignee, to, among other things, set aside the sales made under the decree, including that of lots 21 to 36, in block 10, Walker's dock addition, and to set aside the deed made by Eli Kinney and wife, vesting the title, through *mesne* conveyances, in Loewenthal, and to have the deed from Walker and wife to Kinney, of said lots, declared a mortgage, and that the court, upon answers filed by the bank and others, and the trial of the issues thereby made, entered a decree on July 11, 1882, finding that Walker, being seized in fee of the lots, conveyed them to Eli Kinney; that the assignee claimed that the deeds, though absolute in form, were intended as a mortgage security, as to which the court made no finding; that the property, through sundry *mesne* conveyances, came from Kinney to Louis Kuhn; that Kuhn, on November 16, 1880, by deed duly recorded, conveyed the lots to Berthold Loewenthal; that the title so acquired by him was vested in him in trust, for himself, and the bank, Schoelkopf and Bauer; that they were innocent purchasers for value, without notice; that the assignee did not commence suit within two years from the time when the cause of action accrued to him; that he was put upon inquiry of the adverse claim of Kinney more than two years before commencing the suit; that he had been guilty of negligence in bringing the suit, and that he is now barred of any suit by virtue of the statute of the United States in such case made and provided,—and the supplemental cross-bill was dismissed for want of equity, nothing being said as to the sale under the reversed decree. This decree would seem to be an adjudication that Walker had no title to the property at the time of the sale under the Bauer reversed decree, and if not, the bank got nothing by its purchase at the sale, and there would be no equity in charging it in account with the amount of that sale. But appellees' counsel insist upon nothing more than that, the decree being

reversed, the sale became void, and that the security has never been foreclosed, but that the suit is still pending for that purpose, and when the security is collected the bank will be charged. The filing of the supplemental cross-bill by the assignee was an election to avoid the sale. We are unable to say there was error in disallowing this item of account.

As regards the other objections to the account stated, it appears that prior to a writ of error being sued out and served in this case, all of the collaterals described in the objections were sold to the complainant, the bank. On June 28, 1881, the assignee filed a supplemental cross-bill, in which he set up the reversal of the decree, elected to have the sales set aside, and asked for a decree of the court to that effect, and for a surrender of the collaterals to him after satisfaction of the indebtedness due the bank, on accounting. On January 12, 1884, the assignee, by leave of court, dismissed without prejudice his supplemental cross-bill filed in 1881, as to all the items of sale except the Kohn notes. Two principal notes, each for $6000, made by Walker to the bank, were sold by the bank to H. A. Kohn & Bros., at the time of their execution. Walker also pledged as collateral security two other notes, of $12,500 each, executed by himself, for security of which, and of two other collateral notes made by him, of $12,500 each, (there being four collateral notes in all,) Walker executed his trust deed to Rogers, trustee, conveying blocks 84, 85, and the north half of blocks 91 and 92, in Canalport. The two collateral notes securing the two principal notes of $6000 each, sold to Kohn, were delivered to Kohn by the bank. The other two collateral notes were pledged with the bank as a general collateral for any and all indebtedness due or to become due the bank from Walker,—which latter collaterals were sought to be sold under the bill in this case. The principal notes held by Kohn being due and not paid, he caused advertisement to be made by the trustee, Rogers, for the foreclosure and sale of the premises in the trust deed

described.   Therefore, in 1875, Walker filed his supplemental cross-bill, and obtained an injunction stopping that sale. Upon the hearing, in 1878, Walker's cross-bill and supplemental cross-bill were dismissed for want of equity, and the temporary injunction which had been granted was dissolved. The writ of error was sued out by Walker from the Appellate Court to that decree on June 18, 1878, but there is nothing in this record showing when such writ of error was served. An appeal or writ of error does not continue an injunction in force, unless so ordered.   (Rev. Stat. 1874, p. 581, sec. 21.) It was not so ordered here, and the injunction was not continued in force.   The decree of the circuit court was affirmed by the Appellate Court, and a writ of error was not sued out of the Supreme Court, in this case, until long after September 19, 1878.

On September 19, 1878, Rogers, the trustee, at the request of Kohn and the bank, again advertised said blocks 84, 85, and the north half of blocks 91 and 92, for sale, and sold the same to Kohn for $14,786.50, under the powers in said trust deed.   The Kohns and the bank being both interested in said security, it was bought in by Kohn for the benefit of both, and Kohn and the bank were each charged with one-half of said bid at the sale.   In this account, here, the bank is charged with its half,—$7393.25.   The assignee objected to this, and called for an accounting of what the collaterals were held as security for, or that those collaterals should be excepted and the bank not be charged therewith; and the claim is, that the assignee has a right to take the property so foreclosed and bought in under the trust deed, upon payment of the notes secured,—that the foreclosure by sale of the trustee, while this suit was pending, was illegal and void.   Although the effect of the sale of the collaterals under the decree which has been reversed,—whether the sale thereby became void or only voidable, and whether or not it has been disaffirmed by the assignee,—has been much discussed in the argument, we

do not regard that a practical question here, which need be considered, inasmuch as it is not the sum which the collaterals sold for at the trustee's sale under the decree, which either party seeks to have brought into the account, and the bank charges itself; and is charged in the account, with the amount of the bid at the trustee's sale. The right to sell under the trust deed was not at all dependent upon any purchase of the collaterals upon a sale made of them. That was not the source of the trustee's power to sell. His power came from Walker himself, in his trust deed. In making the sale under the trust deed, the trustee was but exercising the precise authority which Walker had given him to make the sale ; and the right of the Kohns and the bank to direct the trustee to make the sale, did not depend upon any purchase by them of the collaterals, but it came from the pledge of the collaterals by Walker with the bank. He pledged them for the payment of his indebtedness to the bank, and the bank had the right to enforce their collection for the payment of such indebtedness.

There being no injunction against the sale by the trustee, and no irregularity in the making of it being complained of, and the principal indebtedness being established, we do not see why the trustee's sale should not stand. The only objection to it is, that it was made while this suit was pending. This suit sought to have the collaterals sold for the payment of the principal indebtedness. The trustee's sale was a proceeding to collect the collaterals, by selling under a trust deed property conveyed to secure payment of the collaterals. These were two independent remedies for enforcing payment of the principal indebtedness. There was still another remedy which was open,—to bring suit upon the collaterals to enforce their collection. These were but different remedies, and it is not perceived why the pursuing of either one should be a bar to the pursuit of the others. There is a propriety that such a suit as this, for a sale of the collaterals, should

not be held to stay the collecting of them, as through delay of their collection until the end of the suit the collaterals might become impaired or worthless. The trustee's sale during the pendency of the suit was, of course, subject to whatever decree might be rendered therein. Had the decree found that there was nothing due of the principal indebtedness for which the collaterals were pledged, then the trustee's sale would have been invalid, and have gone for naught; but the whole principal indebtedness being established by the decree to be due and unpaid, we do not regard the pendency of this suit as affecting the trustee's sale.

A consideration of the many exceptions to the account, and all that has been urged in their support, has not made it satisfactorily appear to us that there is any error in the account.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*