# WILLIAM G. WING *et al.*

### *v.*

# ESTHER GOODMAN.

75  159
76a 485

1. VENDOR'S LIEN — *not transferable.* A vendor's lien is personal, and cannot be conveyed by deed or assigned by contract. A quitclaim deed, by the holder of such lien to a third party, for the land, will have no effect on the lien, and will not bar its enforcement by him.

2. CROSS-BILL — *improper, except where affirmative relief is sought by defendant.* The object of a cross-bill being to enable a defendant to obtain affirmative relief, if the facts alleged in it are nothing more than a defense to the case made by the bill, and, if proved, could afford the defendant no affirmative relief, the cross-bill will be obnoxious to a demurrer.

3. MARRIED WOMEN — *what is their separate property.* Where a husband, being free from debt, and without any fraudulent intent, has property, purchased and paid for by him, conveyed by the vendor to his wife, it will become the separate property of the wife, as much so as if purchased by her with money which she obtained before marriage.

4. And where the wife, at her marriage, had money which the husband recognized and treated as hers, and which she invested at times and on some occasions gave it to him to invest for her, and he bought property with money which belonged to the wife, though deposited by her in his name, taking the title in her name: *Held,* that the property so purchased was the separate property of the wife.

5. WITNESS — *competency of husband for his wife.* On bill by the wife to enforce a vendor's lien for the purchase-money due her on the sale of her separate estate, the litigation being in regard to her separate estate, her husband is a competent witness in her behalf.

6. PARTIES — *husband and wife.* In a suit by a wife, in respect to her separate estate, the law does not require her husband to be joined with her, but where she seeks to enforce a vendor's lien, for money due on land conveyed by her and her husband, but which belonged to her, it is proper to make her husband a defendant, so as to bind him by the decree and thus protect the purchaser from any subsequent claim by him.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a bill in chancery, filed by Esther Goodman, against William G. Wing, Ellen M. Lyford, (formerly Bickford) Noah

G. Lyford, and Oliver Fellows, to enforce a vendor's lien. The material facts of the case appear in the opinion.

Messrs. SHUFELDT, BALL & WESTOVER, for the appellants.

Messrs. PERKINS & TRUMAN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Esther Goodman, a married woman, on the 10th day of June, 1868, in the Superior Court of Cook county, against Ellen M. Bickford, William G. Wing, and Oliver Fellows, to enforce a vendor's lien on a certain lot in the city of Chicago, which was sold and conveyed by appellee to Ellen M. Bickford.

In August, 1865, the title to the property was in Ellen M. Bickford, who resided in the State of Maine, but it was owned and controlled by William G. Wing; the property was purchased of Wing for $3,500, and duly conveyed to appellee.

At the same time, Wing was engaged in trade in Chicago, and had on hand a stock of wines and liquors. The business was conducted in the name of Ellen M. Bickford, but the goods were really owned by Wing.

On the 12th of September, 1865, appellee conveyed the lot to Ellen M. Bickford, on a contract, as she claims, made with Wing, by which she was to receive $3,700 for the property; on the other hand, Wing claims that the property was paid for by a sale of the stock of wines and liquors to Richard Goodman, the husband of appellee.

Upon a hearing of the cause on the evidence, the court entered a decree for appellee and ordered a sale of the premises to pay the purchase money.

The appellants, Wing and Bickford, have prosecuted an appeal to this court.

The appellants interposed a plea to the bill, in which it was alleged that, before the commencement of the suit, complainant had made and delivered a quitclaim deed of all her right and interest in the premises to one Miller.

The court, upon argument, overruled the plea, and this is the first question presented by the record for consideration.

At the time the deed mentioned in the plea was executed, appellee had no title to the premises to convey, and it is clear no estate in the land passed by the deed.

A vendor's lien cannot be conveyed or even transferred, by contract.

It was held by this court, in *Richards* v. *Leaming*, 27 Ill. 431, that the right of this lien is confined to the person of the vendor alone, and that it was not assignable. See, also, *Keith* v. *Horner*, 32 Ill. 524.

The deed set up in the plea had no effect on the vendor's lien, and the plea was properly overruled by the court.

The appellants also filed a cross-bill, in which it was alleged, among other things, that the property in controversy was not the separate property of Esther Goodman, but was that of her husband; that on the 5th day of September, 1865, Esther and Richard Goodman bought the goods mentioned in the answer for $4,254.85, and gave a deed of the lot for $3,500, and that Richard paid the balance of the purchase price of the goods, and that the goods had not been otherwise paid for, and should the lien be enforced, the price of the goods would be lost. The prayer of the cross-bill was, that Richard and Esther Goodman be made parties defendant, ruled to answer, and for relief according to the facts.

A demurrer to the cross-bill was filed, and sustained by the court, and the cross-bill dismissed.

The object of a cross-bill is to enable a defendant to obtain affirmative relief, which cannot be had under an answer.

If all the allegations of appellants' cross-bill were true, it is difficult to perceive what affirmative relief could have been given.

If the allegations of appellants' cross-bill had been proven, such would have been a complete defense to the case made by appellee in her bill and would have defeated a recovery, but no affirmative relief was required and none could have been given.

It is true, the prayer called for affirmative relief, but there were no charges in the bill under which evidence could have been introduced upon which to base a decree.

In *Jones* v. *Smith*, 14 Ill. 231, it is said : A cross-bill is proper whenever a defendant has equities arising out of the same subject matter which entitle him to affirmative relief which he cannot obtain in the original suit.

The equities of appellants, as disclosed by this record, will be searched for in vain, that cannot be adjusted in the original suit under the issues made by the bill and answer.

The demurrer was, therefore, properly sustained to the cross-bill.

It is next urged by appellants that the bill cannot be maintained in the name of appellee alone, that her husband should have brought the suit in his own name, or at least have joined with appellee, and that it was error to allow the husband to testify for appellee, his wife.

If the property sold by appellee can be regarded or treated as her separate property, it necessarily follows the bill was properly brought, and the testimony of the husband was admissible

It appears from the evidence that prior to 1861, appellee, when she was married, was possessed of money which came from her parents. After the marriage this money was recognized and treated by the husband as the property of the wife. At times she invested it herself, and on some occasions gave it to her husband to invest for her.

When the lot was purchased, the money was in bank, deposited in the name of the husband ; he says she deposited it in his name ; he drew a check when she made the purchase.

But in the view we take of the case it is immaterial whether the money that paid for the property at the time it was conveyed to appellee, was her separate property, or belonged to her husband.

The appellant, in detailing his version of the transaction, says Mr. Goodman told him that he would purchase the house,

but that he agreed to buy one for his wife, the appellee, and that he would have this deeded to her.

At the time the property was conveyed to appellee it is not pretended that her husband was indebted, or in any manner involved; on the contrary, he appears to have sold a farm in the country, and was in good circumstances. As the husband of appellee was entirely free from debt, he had an undoubted right to purchase real estate and have it conveyed to his wife, and when this was done, without any fraudulent intent, the property conveyed would become the separate property of the wife, as much so as if purchased by her from money which she obtained before her marriage. *Haines* v. *Haines,* 54 Ill. 74; *Thomas* v. *City of Chicago,* 55 Ill. 406.

On appellant's own evidence that the property was purchased by the husband and paid for with his own means, and he had it conveyed to appellee, we would regard it as her separate property.

But from the evidence on behalf of appellee, it is clear and undisputed that the money which paid for the property was treated and regarded, both by appellee and her husband, as the separate property of the wife, and the premises when purchased were conveyed to her as her own separate property, entirely beyond the control of the husband.

We do not, therefore, entertain a doubt but the property was the separate property of appellee. It follows, then, that when she sold to appellants, the purchase price of the premises would belong to her; she had the right to maintain a bill in her own name for the same, and the litigation being in regard to her separate estate, her husband was a competent witness.

It was no doubt proper that the husband should be made a party defendant, in order that a decree that should be rendered in favor of appellee, or against her, would be a protection to appellants against any claim the husband might in the future set up for the purchase money. This, however, was done, but no reason existed for the husband to join with appellee as a complainant in the bill.

The last point relied upon by appellants to obtain a reversal of the decree is, it is claimed, the proof does not sustain the allegations of the bill.

The appellee testifies that she sold the premises to Wing for $3,700, which he was to pay in cash; that when the deed was delivered, she called for the money, and Wing agreed to send it to her on the next day; her evidence is confirmed by her husband.

Mrs. Wilcox, the daughter of appellee, testifies that she was present when the contract for the sale of the property was made, and heard Wing make the offer of $3,700, and her mother accepted it.

It appears by the evidence of appellee and her husband, that frequent demands were made for the money for the property, but without result.

Several weeks after the sale, a check for $200 was sent to appellee, which she refused to accept. Munson D. Dean testified that in the year 1867, he was present on a certain occasion at Wing's house, when appellee demanded what Wing owed her for the property; in reply Wing stated he never had paid her any thing and never would; that he was saving money to pay his lawyers to fight it off; he further stated " he hadn't an honest hair in his head, and never had." Other evidence was introduced by appellee, but it is not necessary to refer to it in detail.

It is evident that unless these witnesses here wilfully and corruptly swore false, the right of appellee to recover is undoubted.

It is conceded that appellee conveyed the property to appellant and that the consideration for the conveyance was $3,700. The contested point is, whether the consideration for the property was paid, and in what manner it was to be paid.

Appellant Wing testified that Richard Goodman, with the consent of appellee, purchased a stock of liquors, which a Mrs. Bickford owned, at $4,254.85; that the property was conveyed in payment of $3,500 of this amount, and Goodman

gave his notes for the balance of the purchase price of the goods, and that he, Wing, gave appellee a check for $200.

Wing proved by his son, that he heard appellee say she would like to have her husband take the stock of goods, and she was willing to give the property for the goods. He also proved by his daughter, that she heard appellee say the stock of goods was to pay for the property.

The appellant Wing also testified that on the 1st day of November, 1865, he bought of Goodman a half interest in the stock and business for $3,500, and $3,100 was paid in cash, deposited to the credit of Goodman in Badger's bank. The balance was paid in Goodman's notes, which had been given for the amount of the stock in excess of the $3,500 ; that the business was then conducted in the name of Wing & Goodman until March, 1866, when he bought out Goodman for $200.

This theory of appellant Wing was flatly contradicted by appellee and her husband. The evidence upon the controverted question of fact was, therefore, of such a conflicting character, that a correct solution of the question would depend, to a great extent, upon the credibility of the witnesses.

Goodman testifies that he never, in fact, bought the stock of liquors; that he put no money in the business, and took none out; that when the goods were invoiced, he gave Wing his notes for the full invoice, and allowed the business to be conducted in his name for the benefit of Wing, until such time as Wing could shape his affairs to resume business in his own name, and that these notes were surrendered to him when Wing claimed to have bought a half interest in the business.

In this he is corroborated by a number of facts. Burney, who was an employee in the house, testified that Wing told him he would be a partner all the same if Goodman bought the store, and that Wing told him Goodman gave his notes for the stock. These notes, amounting to three or four thousand dollars, were seen by the witness. The bank books of Badger, when produced, fail to show $3,100, deposited to the credit of

Goodman November 1, 1865, at the time appellant claimed to have purchased a half interest in the business.

When the books kept under the direction of appellant are produced, Wing's account appears credited with one-half of the profits of the business while it was conducted in the name of Goodman. They also disclose the fact that Goodman's interest in the business at the time it is claimed he sold out, in the spring of 1866, was $5,437, which he sold out for $200.

It was also in proof that of the goods embraced in the invoice, which constituted the $5,000 which it is insisted paid for the property of appellee, three bills, amounting to $1,372.75, were paid for by checks drawn in the name of Goodman a number of weeks after he assumed control of the business.

These facts are so utterly inconsistent with the theory advanced by appellants that the conclusion is irresistible that the defense interposed is not fortified by that degree of honesty and truthfulness that it should be to give it a standing in a court of equity.

The record discloses other facts which tend to show the dealings of appellant Wing have not been characterized by that degree of honesty and fairness that they should have been in order to inspire full confidence in his statements.

The declarations by him made, of his dishonesty; his property covered up in the name of another; his failure to schedule the property purchased of appellee in the proceedings in bankruptcy, where a complete schedule of his property was required under the sanctity of an oath, and the clear and direct contradiction between his testimony and that of others might well, and no doubt did, shake the confidence of the Superior Court in the credibility of his story.

Upon a careful consideration of all the evidence, we are satisfied the proof sustains the allegations of the bill, and in the decree there is no error. It will therefore be affirmed.

*Decree affirmed.*