CHARLES HOOK

v.

RICHARD RICHESON et al.

*Filed at Mt. Vernon January 25, 1886.*

115  431
121  455
23a  257
115  431
138   67
115  431
140  625
146  310
115  431
149  542
151  188
152  474
115  431
160  447
115  431
157  163
115  431
57a   95
115  431
76a  485
115    431
189   4347
189   6451
115    431
99a   6541

1. CHANCERY—*matters in defence arising before the cause is at issue— whether to be availed of by answer or cross-bill.* After a cause in chancery is at issue, any facts in defence not occurring thereafter should be set up by amendment to the answer, and not by a cross-bill. If matters relied on merely to defeat the relief sought, and which do not entitle the defendant to affirmative relief, are presented by cross-bill, it will be subject to demurrer.

2. SAME—*decree in vacation—when becomes final.* It is competent for the court, after hearing a chancery case in term time, to take it under advisement, and to announce the decree therein to be rendered, in vacation; but under the statute (Rev. Stat. 1874, chap. 37, sec. 47,) the decree will not become final until after the expiration of the next term thereafter, and then only as modified and approved, if modified at all. The action of the court at such succeeding term in overruling objections thereto, is an approval of the decree.

3. PRACTICE—*after reversal and remandment—what further proceedings may be had in the trial court.* Where a decree has been reversed and the cause remanded generally, the same will be open to amendments in the pleadings, and to the introduction of additional evidence, except as to questions fully discussed and settled by the opinion of this court.

4. But where the cause has been remanded for further proceedings in conformity with the opinion filed, which states that it may be open to the parties to take further proof, if desired, as to a certain matter named, the cause will not be open for any other purpose than that mentioned, and the introduction of new matters by amendment and proof is not permissible.

5. In such case the filing of a supplemental bill showing the death of one of the defendants since the hearing, and a conveyance by him during his life of all his interest in the property involved, to a co-defendant, making no new parties and alleging no new matters affecting the merits, will not entitle one of the defendants to file a cross-bill setting up new matters in defence.

6. FORMER ADJUDICATION—*in the Supreme Court—as to matters availing on second appeal.* Where a cause has been reviewed by this court, and remanded with directions as to the decree to be entered, a party on a subsequent appeal can not assign for error any cause that accrued or existed prior to the judgment of this court. All errors not assigned will be considered as waived, and can not afterward be urged.

7. LIEN—*of collector's bond—on his real estate.* The execution and recording of a tax collector's bond creates a lien upon all the real estate owned by him at the time, and all purchased by him after its execution and before default, although he may have conveyed it before default.. The lien follows the property, and subsequent purchasers are bound to take notice of it, and they can not, by any contract with the collector, acquire any rights in such real estate paramount to that lien.

8. SUBROGATION—*in favor of surety, to lien of creditor.* If a judgment in favor of the State or a county, against a collector and his sureties on his bond, is paid either voluntarily or by the sale of the property of a surety, the latter may maintain a bill to be subrogated to any lien or securities held by the State or the county, or by his co-sureties, that might by them, or either of them, have been enforced for the payment of the judgment; and such surety may enforce such lien to reimburse himself for the sum paid by him, with accruing interest.

9. PARTIES—*on bill by surety to be subrogated to creditor's lien.* On bill by a surety to be subrogated to the lien of the creditor upon lands of the principal, as against his alienees, the co-sureties are necessary parties, and if they do not object to being made complainants, the defendants can not make that objection for them.

10. PURCHASER—*right to compensation for improvements as against prior lien.* The purchaser of land which is subject to a statutory lien in favor of the State will not be entitled to compensation for valuable improvements made by him upon the premises, as against parties proceeding in equity to enforce the lien. He stands the same as a purchaser of land incumbered by mortgage or judgment.

11. PRINCIPAL AND SURETY—*private agreement between co-sureties—effect upon their rights as against their principal.* No private arrangement among co-sureties for the distribution of the burden of their joint liability among themselves, will affect or defeat their rights against their principal.

12. In this case judgments were recovered by the State and a county against a county collector of taxes and his sureties on his bond, the latter of which the sureties paid. After this, one of the sureties entered into an agreement with the others to pay the judgment in favor of the State in consideration of their each paying him $100, and allowing him the use of their names in bringing a suit to be subrogated to the lien of the State, and enforce the same by the sale of lands to which such lien had attached: *Held,* that such arrangement could not be set up to defeat the suit in the names of all the sureties to enforce such lien, and that as to the purchasers of the lands subject to the lien it was a matter of no concern whether the recovery was by one or all of the sureties.

13. HOMESTEAD—*acquired after lien attaches.* A person after the execution of his bond as collector, and its record, can not acquire a homestead in land so as to hold the same exempt from sale on bill to enforce the lien created by the recording of such bond.

14. SAME—*sale subject to homestead.* A decree foreclosing a lien on land in which there is a homestead estate, that the same be sold subject to a homestead of $1000 unless the defendants, by a day named, pay to the master a given sum, is erroneous, in not directing an absolute sale, subject to the homestead. But on failure to make the payment the decree becomes absolute, and the error is harmless.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Perry county; the Hon. AMOS WATTS, Judge, presiding.

Mr. F. M. YOUNGBLOOD, for the plaintiff in error:

This cause is now for the fourth time before this court. It first appeared as *Richeson* v. *Crawford,* 94 Ill. 165, next in 101 Ill. 351, and again under the style of *Hook* v. *Richeson et al.* 106 Ill. 392.

Counsel contended that the former decisions of this court have not settled the rights of the parties on the merits, and new matters have been introduced into the record by amendment, presenting new questions. This court, in both 94 and 101 Ill., held that complainants were entitled to be subrogated to the rights of the State and the county for what they had actually paid on the judgments, and that the homestead of Hoge was not subject to the lien of the bond, and reversed with specific directions as to the Cantrell land, only. After this order of reversal the decree as to Hook became null and void. (*Coalfield Coal Co.* v. *Peck,* 105 Ill. 529.) The parties then stood in the circuit court, so far as Hook was concerned, precisely as if no decree had ever been entered against him; and if any new facts had come to his knowledge after the former trial, which were material to his defence, he had a right to present them to the court by answer or cross-bill. *Chickering* v. *Failes,* 29 Ill. 294; *Kingsbury* v. *Buckner,* 70 id. 514; *Rising* v. *Carr,* id. 596; *Loomis* v. *Corwin,* 106 id. 660; *Newberry* v. *Blatchford,* id. 584; *Railroad Co.* v. *Lee,* 87 id. 454.

In each of these cases this court holds that where new facts are presented which are material, the former opinion can not be interposed as *res judicata*. As to the powers of the chancellor in vacation, see *Blair* v. *Reading*, 99 Ill. 600.

If the court erred in rendering the last decree against Hook, he is not estopped by the former opinion of this court from presenting subsequent errors to this court for review.

All the facts set up in Hook's amended cross-bill are admitted by Richeson, and proven. No right of subrogation could arise in favor of defendants in error until they had actually paid their liability on the bond. The facts now before the court show that Link, Hall, St. Clair and Cochran never did pay anything on these judgments, nor do I believe that the other parties who have subsequently sold their interest in this litigation had any such interest as could be assigned to Richeson, so as to empower him to harass and annoy parties interested in these lands.

The State and county could not have asked for the sale of anything more than Hoge owned at the time the lien attached, and in such a proceeding by the State and county, equity would have allowed each of the vendees of Hoge to have relieved his property from the lien, by paying to the State and county its value at the time Hoge conveyed it, with legal interest thereon.

Mr. Thomas J. Layman, for the defendants in error:

If Hook had any homestead right in the twenty-eight-acre tract, why did he fail to assert it in this case when it was before this court at a former term? The decision is conclusive as to all errors that might have been assigned. *Newberry* v. *Blatchford*, 106 Ill. 593; *Rising* v. *Carr*, 70 id. 596.

A decision of an appellate court is final as to the matters decided, and conclusive upon the parties on a second appeal or writ of error in the same case. *Hollowbush* v. *McConnell*, 12 Ill. 203; *Kingsbury* v. *Buckner*, 75 id. 514.

Richeson had a perfect right to buy the interest of Dillon and others in this suit, and to use the names of the assignors. *Ridgeway* v. *Underwood*, 67 Ill. 419; *Ryall* v. *Bowles*, 3 White & Tudor's Lead. Cas. 615; *Henderson* v. *Welch*, 3 Gilm. 340; *Chapman* v. *Shattuck*, 3 id. 49.

When a cause is remanded with directions as to the decree that shall be entered, a party can not, on a subsequent appeal, assign for error any cause that accrued prior to the decision of the Supreme Court. *Ogden* v. *Larrabee*, 70 Ill. 510; *Ward* v. *Johnson*, 5 Bradw. 30.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Bill was filed by appellees in the circuit court of Franklin county, wherein it was, among other things, alleged that Marion D. Hoge was collector of taxes for Franklin county for the year A. D. 1867; that on December 5, A. D. 1867, he gave bond, as required by the statute, for the faithful performance of his duties as such collector, which was duly approved and recorded, and that the bond was signed by the complainants, and Daniel Mooneyham and Lewis G. Payne, as sureties; that there came to the hands of Hoge, as such collector, a large sum of money belonging to Franklin county, which he failed to account for, and that a judgment was afterwards rendered in the Franklin county circuit court against Hoge and his sureties for the amount due the county, which judgment the complainants and said Daniel Mooneyham paid and discharged; that Hoge, as such collector, was also in default in regard to taxes due the State, which he had collected, for which the State recovered judgment in this court against him and his sureties, and which was not paid at the time of the filing of the bill. Subsequently, a supplemental bill was filed, showing that since the filing of the original bill the latter judgment had been paid and discharged by the complainants and Mooneyham. It is further alleged in the bill, that at the date of making and recording the bond, Hoge was

the owner of two certain parcels of real estate described in the bill, with a statement of the date on which he acquired title to each tract, after the recording of the bond, and that Hoge sold and conveyed all his real estate before either of the judgments was recovered. It is then charged that the bond of the collector became a lien, from and after the time it was recorded, on all the real estate which he owned at the time the bond was recorded, and also upon all the real estate subsequently acquired by the collector, and that the lien is still in force; that Hoge, the collector, and the said Lewis G. Payne, one of the sureties, are both insolvent, and that neither of them paid any part of the judgments. Hoge, and all persons claiming title to these lands through him, and Payne and Mooneyham, are made defendants. The prayer is, that enough of the real estate to pay the judgment in this court in favor of the State be decreed to be subject to the judgment, and be sold to pay the same, and that the remainder of the real estate, or so much as may be necessary, be sold to pay the complainants, with interest, the amounts by them paid on the judgment in favor of Franklin county. A general demurrer was interposed to the bill, the venue was changed to the county of Perry, and the circuit court of that county sustained the demurrer, and decreed that the bill be dismissed. An appeal was prosecuted by the complainants from that decree to this court, and this court, at its November term, 1879, on hearing the appeal, reversed the decree of the court below, and remanded the cause to that court. (*Richeson et al.* v. *Crawford et al.* 94 Ill. 165.) In the opinion then filed it was held, that under the act of 1853, (re-enacted as section 134 of the Revenue law of 1872,) the approval and recording of a collector's bond created a lien upon the real estate of the collector of taxes, as against subsequent purchasers from him acquiring the legal title before judgment against him; that where the sureties of a county collector are compelled to pay money to the State or county for the default of the collector

after he has transferred his real estate subsequent to the attaching thereto of the statutory lien, they are, in equity, entitled to be subrogated to the lien in favor of the State, and may enforce the same against the grantee of the collector by a bill in chancery to reimburse themselves for the amount paid by them, and that where a mortgage or further security is taken from the principal debtor, the property embraced in it is to be held not only for the benefit of the creditor, but also for the indemnity of the surety, and it is the right of the surety, when he pays the debt of the principal, to be subrogated to whatever security the creditor had.

Upon the case being remanded, answers were filed putting in issue the material allegations of the bill, and Charles Hook set up homestead in lands conveyed by Hoge to him; that on the 21st of December, 1868, they were not worth exceeding $400, and that he had put valuable and lasting improvements thereon worth at least $2500, and he denied that any lien ever attached to his land by virtue of the collector's bond. Proofs were taken on the issues thus made, and, upon hearing, the court decreed according to the prayer of the bill, and that the lands be sold in the inverse order of their alienation by Hoge. The defendants appealed from that decree to this court, and the case was heard here at our November term, 1881, when it was adjudged that the decree below be reversed, and that the cause be remanded to the court below, with directions in the opinion then filed. (*Crawford et al.* v. *Richeson et al.* 101 Ill. 351.) It was then held, among other things, that the statutory lien created by the approval and recording of the collector's bond attaches not only to the lands then owned by the principal, but also to the after acquired lands, the same as in the case of a judgment; that the sureties upon a collector's bond have the right, in equity, upon the recovery of a judgment against them upon the bond, and before its payment by them, to file a bill, and require the lands of the collector subject to the lien of his

bond, though they have passed into the hands of innocent purchasers, to be sold for the payment of such judgment, and upon supplemental bill showing payment of the judgment, to be subrogated to the lien of the State, and have the lands sold for their reimbursement; that where the lien of a collector's bond attached to lands a part of which was acquired after the recording of the bond, and such lands have been sold and conveyed by the collector to different persons and at different times, it is proper to order their sale in the inverse order of their alienation, on bill by his sureties to be subrogated to the lien of the State, and this without regard to the time of acquiring the title to the different parcels which were purchased after the recording of the collector's bond. The point was made in argument, that the lands conveyed by the collector were released from the lien of his bond by reason of an act of the legislature of March 31, 1869, extending the time within which the collector was required to pay the State revenue until January 1, 1871, which extension was agreed to by the sureties; but it was held that it did not have that effect, and that the lands were bound by the lien of the bond, notwithstanding the act. With respect to Hook's claim of homestead it was said: "It appears from the evidence, that on October 27, 1868, Hoge purchased a house and some two acres of land, and at once moved into the house with his family, and occupied it as his homestead until he exchanged it with one Charles Hook. The property was shown to be worth not exceeding $800. Hoge had a clear homestead right in this last named property, and it being of less value than $1000, it was not subject to the lien of the bond, and should not have been decreed to be sold. * * * On December 21, 1868, Hoge and Charles Hook exchanged lands, Hoge conveying by warranty deed this house and two acres, and twenty-eight acres elsewhere, to Hook, for which Hook conveyed to Hoge one hundred and twenty acres of land, and paid him $1000." And after discussing the rule as to the

right of subrogation, where one tract of land is exchanged for another, and each is successively occupied as a homestead, and finally concluding that the right existed as to the tract last acquired and subject to the claim of homestead therein, it was added: "This principle we do not find it practicable to apply with respect to the first exchange. That was not, as in the second case, the mere exchange of one tract for another, but a house and two acres of land, the homestead of Hoge, and not subject to the lien, together with twenty-eight acres of land, were exchanged with Hook for one hundred and twenty acres of land and $1000. This was not an exchange proper, in the legal sense. We do not see but that the twenty-eight acres is subject to the lien."

After the case was remanded to the court below this the second time, a supplemental bill was filed showing the death of John McFalls, one of the defendants, since the last hearing, and that he had, before his death, conveyed the lands alleged in the bill to have been conveyed to him, to Benjamin McGuire, another one of the defendants. And afterwards, Charles Hook, by leave of the court, filed his cross-bill in the case, setting up that the two acres on which was the house occupied by Hoge as a residence, and the twenty-eight acres, in fact constituted an entire property, and was the homestead of Hoge, occupied by him as such at the time he conveyed the tract to Hook, and of less value than $1000; that he has since erected a dwelling house upon the twenty-eight acres, and now occupies it as his homestead; setting up the act of the legislature of March 31, 1869, extending the time within which the collector was required to pay the State revenue until January 1, 1871, and alleging that the sureties consented to that extension, knowing, at the time, that he had exchanged lands with the collector, and that he was then in the possession of the two tracts conveyed to him by the collector as his homestead. Answer was filed putting these allegations in issue.

Subsequently, Hook filed an amendment to his cross-bill, in which he alleged, in substance, that the complainants have no right to be subrogated to the rights of the State, because Richeson, prior to the payment of either of the judgments, made an agreement with his co-complainants that if they, and each of them, would pay to him $100, and allow him to use their names in prosecuting this suit, he (Richeson) would pay off all of said judgments mentioned in the original bill; that each of said parties, in pursuance of said agreement, did pay to Richeson $100, and that is all that either of said parties, except Richeson, ever paid on either of said judgments; that this agreement was made long after the rendition of said judgments, and with full knowledge of all the rights of Hook; that Richeson, at the time, agreed with his co-complainants that he would not interfere with the lands of Hook; that Richeson paid off the judgment in favor of the county with the money so received from his co-sureties, and the proceeds of certain lands Hoge conveyed to Daniel Mooneyham for the use of his sureties; that said land was worth $1500, and is not accounted for by complainants; that Richeson procured the Auditor of State to bid in his lands, in satisfaction of the judgment in favor of the State, at double their value; that Richeson never paid any money on either of said judgments, except the amount received from his co-sureties as aforesaid, and the proceeds of the real estate conveyed by Hoge to Mooneyham; and that if, as between the sureties of Hoge and Hook, the former show themselves entitled to subrogation as to the twenty-eight acres, they can only avail themselves of the value of said land at the time Hook purchased the same, and that at that time the land was not worth more than $280. Complainants in the original bill, by leave of the court, then withdrew their answer, and filed a special plea, setting up the adjudication of these questions in *Crawford et al. v. Richeson et al., supra,* as a bar to their further adjudication. Further proofs were taken, and

the cause was heard on original and amended and supplemental bills and answer, and cross-bill, amended cross-bill, and plea and proofs,—all the evidence heard on the former hearings being submitted to the court, as well as the evidence taken since the cause was last remanded, though such evidence was not then read,—and the court thereupon decreed in favor of the complainants in the original bill, and dismissed the cross-bill. The hearing was at the October term, 1882, but the court, not being then ready to render a decree, took the case under advisement, and announced the decree to be rendered in vacation on the 17th of February, 1883. Hook thereupon prosecuted an appeal to this court, but that appeal, on motion, was dismissed at our May term, A. D. 1883, because the decree might, under the statute, be set aside at the next term of the circuit court, which would convene in April, A. D. 1883, and hence would not be a final decree until after the expiration of that term, the appeal being therefore prematurely prosecuted. (*Hook* v. *Richeson et al.* 106 Ill. 392.) Afterwards, at April term, 1883, of the circuit court, Hook, by his counsel, moved the court to set aside the decree, because—

*First*—He could prove that since Richeson gave his deposition he had bought the interest in the result of this suit of his co-complainants, Huddleston, Wm. A. Beaty, Whittington and Hagler, and released them from all liability for costs, and was then the sole complainant in the case, and that he did not know these facts in time to take their testimony.

*Second*—He can prove, in support of his cross-bill, that the land now claimed by him, at the time Hoge owned it, constituted a part of his homestead; that the whole did not exceed in value $1000, and gives the names of his witnesses.

*Third*—His counsel was unable to be present at the hearing, by reason of sickness.

*Fourth*—He was misled by Richeson and his counsel as to when the cause would be heard, until the day before the hearing, when his counsel was too sick to attend court.

Complainants were allowed to file affidavits in opposition to this motion, and the court afterwards overruled the motion. Counsel for Hook thereupon moved for a new trial, for the following reasons :

*First*—Said cause was taken under advisement at the last term of this court, by the presiding judge, against the objections of said Hook.

*Second*—There was no hearing of said cause at said term.

*Third*—The court heard said cause during said vacation without the consent of said Hook, and filed the decree during vacation without the consent and against the objections of said Hook.

*Fourth*—The court did not find the amount due the complainants, but left that for the clerk to do.

Counsel for complainants then made a cross-motion to strike this motion from the files. The court overruled both the motion and the cross-motion, and Hook thereupon prayed an appeal, which was allowed, to this court. That appeal was, at our November term, 1883, on motion of complainants' counsel, dismissed, because it should have been prosecuted to the Appellate Court for the Fourth District. Afterwards a writ of error was sued out of the Appellate Court for the Fourth District, and the record was taken to that court for review, and that court, on final hearing, affirmed the decree of the circuit court. The present writ of error brings the record of that court before us for review.

The grounds upon which a reversal of the decree below is urged are, the disallowing of the defences set up in Hook's cross-bill, and irregularities claimed to have occurred in the rendition of the decree.

The facts alleged in the cross-bill, if admissible at all as a defence, should have been set up by way of amendment to Hook's answer. They did not occur after the case was at issue, so as to make it necessary to bring them into the case by cross-bill, under the rule applicable to defences of that

character. (Story's Equity Pleading, sec. 393; *Jenkins* v. *International Bank et al.* 111 Ill. 463.) The bill sought to subject to sale the lands conveyed by Hoge after his bond became a lien upon them, which included those he conveyed to Hook, for the satisfaction of the amount his sureties had been compelled to pay on account of his default, and these facts were brought forward simply to show that such decree ought not to be rendered. They, in no view, could entitle Hook to any affirmative relief, and had a demurrer been interposed to the cross-bill, it should have been sustained, on the ground that the matters alleged were not proper for a cross-bill, aside from the question whether they would constitute a defence if set up in an amendment to the answer. (*Wing et al.* v. *Goodman*, 75 Ill. 159.) But the court below having treated the cross-bill as properly filed, we shall proceed to consider whether it erred in finally decreeing that the cross-bill be dismissed.

*First*—Had this court, when the case was before us a second time, remanded it generally, the case would then have been open to amendments in the pleadings in the circuit court, and to the introduction of additional evidence upon such points as counsel should have deemed advisable; but even then the case would not have been open to further discussion upon questions fully discussed and settled by the opinion of this court previously filed. But this court did not, at that time, remand the case generally. The decree was reversed, and the cause remanded for further proceedings in conformity with the opinion then filed, and that opinion said: "It may be open to the parties to take further proof, if desired, as to the value of the one hundred and twenty acre tract acquired by Hoge from Britton, at the time it was held by Hoge, with reference to the homestead question of its being of more than the value of the $1000, or not." In effect, under a familiar rule of construction, this was equivalent to saying the case was open for no other purpose, and as the case then

appeared to the court, there was no reason why it should have remained open for any other purpose. The original bill was filed on the 8th of January, 1876, and Hook's answer thereto was not filed until the 28th of May, 1880,—a little more than four years and four months afterwards,—more than ample time, it would seem, in which to discover and set up all his defences. At the hearing, after his answer was filed, he made no application for leave to amend his answer by setting up other defences, and he offered no evidence at the hearing, which was rejected by the court, as to the defences then relied upon. In this court his counsel, so far as was known to the court, presented on his behalf and discussed every defence that he was thought to have, and they were all fully considered and passed upon by the court, leaving, as the opinion shows, nothing in that respect open to further inquiry. If Hook had been the only party to that appeal, it would seem clear, beyond question, that the opinion then filed would have ended the case, for it left nothing, so far as he was concerned, for the court below to do but to cause the property to be sold in conformity with its directions. But the fact that it remained still to take evidence as to the value of certain other property, could not change the conclusive character of the opinion as to him. The execution of the decree, as to the land conveyed to him, would simply be suspended until that fact should be ascertained, and afterwards the sale would proceed. That fact, let it be determined as it might, could in nowise change or affect the adjudication upon the defences he had relied upon in the discussion of the case by his counsel before this court. No reason is given in the cross-bill why the matters therein alleged were not set up in the answer, and we have discovered no such reason in the evidence taken to sustain the cross-bill. From aught that there appears they were all as well known at the time the answer was filed as they are now. Indeed, the answer, as has been seen, set up homestead, and the effect of the extension of time for Hoge

to make payment to the State was discussed in argument and passed upon in the opinion of this court. It is true, in the motion to set aside the decree it is alleged, and supported by Hook's affidavit, that knowledge of the arrangement between Richeson and his co-sureties, whereby he undertook to pay the judgments and save them harmless for a consideration paid, came to Hook since the cause was remanded to the circuit court the second time; but that allegation is offset by the affidavit of Richeson showing that Hook had such knowledge when his answer was filed, and that the agreement to that effect was drawn up in writing by the attorney then representing Hook in the case.

Counsel contend, however, that complainants were allowed to file a supplemental bill after the case was remanded the second time, and that this raised new issues of fact, and that in order to meet those facts Hook was entitled to set up the matters alleged in the cross-bill. This is a misapprehension. It has been seen the supplemental bill simply showed the death of McFall, one of the defendants, since the last hearing, and that before his death he conveyed his lands involved in this litigation to his co-defendant, McGuire. No new parties were made, and no new matters were alleged affecting the merits of the controversy. The language of this court, in *Ogden* v. *Larrabee,* 70 Ill. 510, is quite pertinent to these facts: "Where a case has been heard in the circuit court, reviewed by the Supreme Court, and remanded, with directions as to the decree that shall be entered, a party can not, on a subsequent appeal, assign for error any cause that accrued prior to the decision of the Supreme Court. It will be presumed where a case has been determined in the Supreme Court upon its merits, and the errors assigned, that the appellant or plaintiff in error has no further objections to urge against the record, and that if any errors exist which are not so assigned, they are waived, and he will not be permitted to have his case heard partly at one time and the residue at

another." And in view of the fact that the counsel filing the cross-bill came into the case as representing Hook, since the case was remanded the second time, the remarks of the court in respect to a like question in *Kingsbury* v. *Buckner*, 70 Ill. 514, are also pertinent: "We can not examine as to the merits of the original case, but only as to proceedings subsequent to the decision at the former hearing. If the course suggested, and so strenuously insisted upon by counsel for the appellant, was pursued by appellate courts, litigation would never cease. New counsel, as in this case, would make new arguments and present additional points for adjudication, and the most resolute persistence would finally settle the rights of the parties. The appellate power of this court would then be exercised more over its own proceedings and judgments than over those of inferior courts." To like effect see, also, *Newberry* v. *Blatchford et al.* 106 Ill. 584; *Briscoe* v. *Lloyd et al.* 64 id. 33; *Walker* v. *Doane,* 108 id. 236.

*Second*—But waiving the view just considered, the court, for other reasons, properly dismissed the cross-bill. There is no evidence whatever to sustain the allegations that the sureties, at the time they consented to the extension of time within which Hoge was to make payment to the State, knew that Hook had obtained a conveyance of land from him; that Richeson agreed with his co-complainants that he would not interfere with the lands of Hook; that Richeson had not accounted for land conveyed by Mooneyham to Hoge's sureties, and that Richeson procured the Auditor to bid in his lands at double their value,—if it should be conceded that these allegations, or either of them, are material,—and so they may be treated as out of the case. The allegation in respect of the twenty-eight acres of land fails to show that it was the homestead of Hoge prior to the execution of his bond, and if it was not then his homestead, it is, obviously, immaterial that it became such afterwards. The facts alleged in the cross-bill, on the contrary, by necessary inference show

that Hoge owned the land when he executed the bond, or at least some time before he purchased the two acres, which was after he executed the bond, and that it was never made a part of the homestead until after the purchase of the two acres, upon which alone was the residence, and the evidence all sustains this view. The evidence shows that the judgment in favor of Franklin county was paid by Richeson and his co-sureties, and that afterwards Richeson made an agreement with certain of his co-sureties whereby he agreed to pay off the judgment against the State, and save them harmless on account thereof, in consideration that they would each pay him $100, and allow him the use of their names in prosecuting the present suit; and it appears that the judgment against the State was paid in whole, or in the greater part, by a sale of the lands of Richeson. We are unable to discover anything in this to defeat this proceeding. Richeson might, in the first instance, without any agreement, have paid the entire amount of both these judgments. His property might have been seized and sold and devoted to that end, by the sheriff, without his consent. Had he voluntarily paid them, or had they been paid by the seizure and sale of his property by the sheriff, he might have maintained a bill to be subrogated to any liens or securities held by the State or the county, or by his co-sureties, that might by them, or either of them, have been enforced for the payment of either or both of the judgments. (Brandt on Suretyship, sec. 269; Sheldon on Subrogation, sec. 169.) It can, manifestly, make no difference to the creditor, the debtor, or the alienee of the debtor's property, whether one, or two, or all of the sureties are entitled to subrogation, for the amount to be collected, and the extent to which it can be made out of property belonging to, or which once belonged to, the debtor, must all the time be precisely the same. The amount is what is actually paid on account of the default of the principal, with accruing interest, and the extent to which it can be made out of property belonging

to, or which once belonged to, the debtor, is limited by the property of the debtor liable to sale on execution issued on the judgments, and to property conveyed by him to which the lien of his bond attached.   His property must pay the judgments, and this includes all real estate which he owned when the bond was executed, and which he purchased and became owner of after its execution, but before default, although he conveyed such real estate, before default, to other parties. The lien followed the real estate, and subsequent purchasers were bound to take notice of it.   Before any right of theirs the real estate was answerable for any default of the collector. It was legally impossible that by mere contract with the collector they could obtain any rights in the real estate to which the lien of his bond attached, paramount to that lien.   Necessarily, therefore, whether one surety was hired by the others to pay off the judgments, or they all contributed equally and paid them off, could concern no one but themselves.   As against the holders of the judgments, they could not thus relieve themselves from liability.   They could thereby neither bind nor affect any one but themselves.   If, here, Richeson made profit in this arrangement, he made it off his co-sureties,—not Hook.   When the fact of the liability of Hook's land for the payment of these judgments is conceded, it is not possible that it can concern him whether the amount chargeable against it shall all go to one, or it shall go equally to all of the sureties.   The principle is settled by express adjudication, no private arrangement among the co-sureties, for the distribution of the burden of their joint liability among themselves, will affect their rights against their principal. Sheldon on Subrogation, sec. 103.   See, also, *McDaniels* v. *Flower Brook Manufacturing Co.* 22 Vt. 274; *Water Power Co.* v. *Brown,* 23 Kan. 676.   The co-sureties were necessary parties to the bill, whether they have made the arrangement charged or not, because, in any view, they are entitled to be

heard; and since they do not object to being complainants, others are not authorized to urge that objection for them.

*Third*—So far as the allegations in respect to improvements are concerned, it is not perceived that the condition of Hook is in any respect different from that of a party purchasing land incumbered by mortgage or judgment lien. Hook's misfortune comes from his not actually knowing what the law required that he should know,—the fact and the extent of the lien of Hoge's bond.

The irregularities complained of, as to the manner of rendering the decree, are, in our opinion, obviated by the action of the court at its April term, A. D. 1883. It was competent for the court, after hearing the evidence at its November term, A. D. 1882, to take the case under advisement, and announce the decree to be rendered therein in vacation; but that decree, by virtue of section 47, chapter 37, of the Revised Statutes of 1874, was only *in fieri*, and could not become final until after the expiration of the April term, A. D. 1883, and then only as modified, if modified, and approved at that term. (*Hook* v. *Richeson et al. supra.*) At the April term, A. D. 1883, counsel for plaintiff in error urged every objection they deemed proper to urge against the decree, and the action of the court in overruling those objections was the *then* approval of the decree in the language in which it was *then* expressed. No matter how the language became incorporated into the decree, it *then* became, and for the first time, the language of the court as the expression of its final determination in the case,—and this although by its terms it related back to take effect as of the preceding term. In *Blair* v. *Reading*, 99 Ill. 600, cited by counsel for plaintiff in error, the attempt was to render a final decree in vacation without any stipulation of the parties to that effect, as provided in section 48, chapter 37, of the Revised Statutes of 1874, *supra,* and it was held the chancellor had no such power. There was no intervention of a

subsequent term, and refusal of the court then to set aside or modify a decree previously announced to be rendered.

The only error we have been able to discover in the decree is this: It is decreed that the land owned by the parties known as the "Cantrell heirs," shall be sold, subject to a homestead of $1000, unless they shall, by the 10th of April, A. D. 1883, pay to the master $468.20. This condition was erroneous. The sale should have been absolute, subject to the homestead right. But since it is not pretended that payment was actually made, the decree, in effect, is now as absolute as if this *nisi* clause had been, in the first instance, omitted. The decree is modified here by striking out that clause; but since we regard it, under the circumstances, as more a matter of form than of substance, no costs will be allowed on that account.

The decree, as thus modified, is affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT: I do not concur in all of this opinion.