## Lake Forest Water Company, Appellee, v. City of Lake Forest, Appellant.

### Gen. No. 5209.

1. APPEALS AND ERRORS—*when finding by court not given special weight.* If the evidence is presented to the trial court in writing and its finding is predicated thereon the Appellate Court has the same opportunities that the trial court had to determine the questions of fact and will do so from the record according to what appears as just and right.

2. APPEALS AND ERRORS—*when admission of improper evidence will not reverse decree in chancery.* If there is proper evidence in the record to sustain a decree, the admission of improper evidence in chancery is not reversible error because it is presumed that the chancellor only considered proper evidence.

3. ORDINANCES—*what competent to determine reasonableness in fixing water rates.* Evidence showing the financial effect of such ordinance during the period of the pendency of litigation to determine such reasonableness, is competent.

4. ORDINANCES—*when estoppel as defense to attack upon, cannot be urged.* Acceptance of an ordinance fixing water rates as a defense, or estoppel to attack such ordinance as a defense, cannot be urged in the absence of a pleading setting up such defenses.

5. ORDINANCES—*when, fixing water rates, will not be disturbed.* The presumption is that water rates fixed by an ordinance are fair and reasonable and the burden is upon the company whose rates are fixed to overcome this presumption and the courts will not interfere and set aside the ordinance unless the rates fixed are plainly unreasonable.

6. EVIDENCE—*effect of withholding.* The withholding or failing to produce evidence which, under the circumstances, the party would be expected to produce, and which was in its power to produce, gives rise to a presumption that the evidence if produced would have shown that the contention of such party was untenable.

Bill in equity.    Appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding.   Heard in this court at the April term, 1909.  Reversed and remanded with directions. Opinion filed March 11, 1910.  Rehearing denied April 13, 1910.

**Statement by the Court.**   The city of Lake Forest is a municipal corporation.   The Lake Forest Water Company is a *quasi*-public corporation, with a capital stock of $50,000, organized under the laws of Illinois for the purpose of constructing and operating a system of waterworks in the city of Lake Forest and supplying the city and its inhabitants with water for public and domestic uses.   On December 9, 1890, the city of Lake Forest passed an ordinance, conferring upon the Lake Forest Water Company, which will hereafter be termed the water company, the privilege of furnishing water within the city limits for a period of thirty years, and providing that extensions shall be made by the company from time to time when required by the city and that the price to be paid by the city for water for public uses should be determined by the city council, and if the amount paid by the city is not satisfactory that the company shall have the right to refuse to furnish water.   The ordinance also provided that the company should furnish thirty hydrants to be located on the first three miles of mains, and if the city required more hydrants on the first three miles the water company should furnish and place them at the expense of the city and the city should pay the necessary expenses of keeping them in order; that hydrants furnished and located thereafter should be connected with the mains by the company but the cost thereof should be paid by the city, and that the company should make extensions of mains whenever called upon by the city, but there should be at least one water consumer for each 500 feet of extension; and the city agreed to pay for public fire service upon such extension at the rate agreed upon hereafter for each mile of such extension for the unexpired term of the franchise.

186     APPELLATE COURTS OF ILLINOIS.

Lake Forest Water Co. v. City of Lake Forest, 154 Ill. App. 184.

The ordinance gave the city the right to purchase the system of waterworks at the expiration of fifteen years after the completion of the works and at the expiration of each succeeding period of five years thereafter, and provided a method of ascertaining the value of the plant at the time of the purchase. The ordinance did not fix the rate to be paid by private consumers of water. It was accepted by the water company, and a system of waterworks was built by the company. The system as originally constructed had 33,130 feet of mains, with thirty-five hydrants, and was completed in December, 1891. When the system first began operating, the authorities of the company agreed with the city upon an annual payment by the city for water rentals of $1,200 and there was harmony between the city council and the company. The amount paid for hydrant rental was increased by agreement in 1899 to $2,400. In 1900 when there was 52,700 feet of mains, the company proposed to the city that if it would pay $4,000 and an additional $40 for each 500 feet of extension of mains the company would reduce its maximum rate to private consumers to twenty cents per 1,000 gallons with a minimum charge of $9 per annum. After some negotiation the proposition was accepted, with the change that the minimum price to be paid by consumers should be $8 per annum. In 1902, dissatisfaction arose between the city and the water company, because of the fact that the city was requiring extensions of mains into more distant additions to the city where the residents were less wealthy and not as liberal users of water as were those in the territory originally supplied with water.

In April, 1904, the company raised the rate for private consumers to twenty-five cents per 1,000 gallons. In May, 1904, the city council appointed a committee to investigate the question of rates, and notified the company that the matter had been referred to this committee. The company advised the committee that

its general manager would act for the company in conference with the committee. There were many conferences between the committee and the company. The company furnished some information and exhibited some of its books to the committee, which employed experts and continued its investigation until December, 1904. On January 9, 1905, the city council passed an ordinance fixing the rate for private consumers at twenty cents per thousand gallons, payable at such time as the company shall determine with a minimum rate of $4 per year, and fixing the rate to be paid by the city for water for public use at $40 for each 500 feet of mains, payable quarterly, and providing that the rates shall be subject to such change as the city council shall from time to time determine in order to make a just and reasonable charge. Thereupon the water company filed a bill in equity against the city, alleging that the rates prescribed by the ordinance of January, 1905, were unjust, unreasonable and insufficient to give reasonable compensation to its stockholders on their investment, and praying that the rates may be reviewed and determined to be unjust, and that the ordinance may be declared void and the city of Lake Forest be enjoined from enforcing the terms of the ordinance. The defendant answered the bill denying that the rates were unreasonable. A replication was filed and the cause referred to the master to take and report the evidence. The master reported the evidence, and the Circuit Court after hearing the cause on the bill, answer, replication and master's report of evidence, entered a decree declaring the ordinance of January 9, 1905, illegal, null, void, and in violation of the rights of complainant, and perpetually enjoined the city from attempting to enforce said ordinance. From that decree the city appeals.

GEORGE E. CHIPMAN, for appellant.

COOKE, POPE & POPE, for appellee.

. MR. JUSTICE THOMPSON delivered the opinion of the court.

The water company insists that the finding of the trial court, that the rates fixed by the ordinance were unjust and unreasonable, is a finding of fact that has the weight of a verdict of a jury and should not be reversed except for clear and indubitable error. The trial court did not see the witnesses but heard the case upon the evidence reported in writing by the master. When the witnesses are examined in open court the trial court has better opportunities of determining the weight to be given to the testimony of the various witnesses than an appellate court, but in cases where the evidence is all presented in writing to the trial court an appellate court has the same opportunities and facilities for coming to a correct conclusion as to the weight and value of the testimony as has the trial court. In such a case there is no presumption on appeal in favor of the decree of the chancellor; but this court must determine from the record the questions of fact as shall appeal to it just and right. Baker v. Rockabrand, 118 Ill. 365; McGinnis v. Jacobs, 147 Ill. 30; Kellogg v. Peddicord, 181 Ill. 24; Brixell v. Brixell, 230 Ill. 446.

Appellant has assigned for error the admission of certain testimony heard on the part of appellee. If there is proper evidence in the record to sustain a decree, the admission of improper evidence in chancery is not reversible error because it is presumed that the court only considered proper evidence. There is no error assigned concerning the rejection of proper evidence, hence it is unnecessary to review the rulings of the trial court upon any question of evidence.

The meritorious question is whether the ordinance is unreasonable and deprives the water company of a reasonable rate upon its investment. The evidence shows that when the plant was originally completed and before extensions were asked for, there were 33,130 feet of mains; the entire plant at that time cost

about $65,000 of which $49,750 was paid by the stock-holders, and the company borrowed $15,000 to complete the construction. The city then had about 1,200 inhabitants, mostly people of wealth with extensive grounds about their residences. In fourteen years the city has increased until it has over 3,000 inhabitants, and the water mains of the company have been extended until it has 74,319 feet of mains. The books of the water company show that there has been expended on construction $102,808.30; to this sum should be added about $4,000 which went into construction but in the books is concealed in the operating expenses by reason of the construction having been put in by consumers of water, whose water bills were rebated until the cost of construction was repaid. The company has from its profits on an investment of $49,750 in less than fifteen years, from its income paid four dividends of five per cent or $9,950; paid its debt of $15,000 made in the original construction, increased its mains to 74,319 feet at an expense of about $44,000 and had over $4,000 in the treasury on January 9, 1905. It has a plant which it values at about $130,000 or at upwards of twenty-five per cent above all money invested in it without any allowance for depreciation.

Experts were called on both sides to testify to the value of the plant. John W. Alvord and Benezette Williams testified on behalf of appellee, and John Erickson and Thomas E. Johnson for appellant. These experts are all civil engineers. Alvord is engaged in making reports on water plants for bankers and investors, and Williams was at one time employed by the city of Chicago but now seems to be in the employ of investors. Erickson is in the employ of the city of Chicago, and Johnson for some time was in the employ of the Sanitary District of Chicago but is now engaged in the construction of water supply plants. In their valuation the experts substantially agree on the value of the tangible property, but on speculative matters are very wide apart. Alvord's

estimates may be measured by the fact that he found from the books of the company that the cost of administration was too small and in making his estimates he allowed a larger amount for operating and administration expenses than the books showed they actually were. He estimated that it would take $111,216 to reproduce the property, and deducted $16,978 for depreciation, leaving the present value $94,238. Erickson's estimate is that it would take $110,117.09 to reproduce the property; he deducts $19,521.58 for depreciation, making the value of the tangible property $90,596.41. To arrive at the value of the plant all the experts add an element that they term "going value," corresponding somewhat to good will, but it is rather the loss of interest while the plant is being constructed and the failure to use the property by residents along the line of mains until they have been educated or become attached to the use of the public utility. Alvord estimates the going value at $17,800 making the total value $121,624. Williams estimates it at $26,159 making the total value $129,678; Erickson estimates it at $10,376, making the total value $100,972.41, and Johnson estimates it at $2,638.39 making the total value $90,866.17. Some of the experts also add a large percentage for what they call speculative profit.

Alvord estimates that to pay operating expenses, interest on the investment and produce a proper sinking fund to make good the depreciation and loss at the termination of the franchise, the plant should produce a yearly income of $22,142. Williams estimates that the plant should produce an income of $22,900 annually, while Erickson's estimate for the same purposes amounts to $14,881.76 and Johnson's amounts to $13,915.21. All these experts estimate interest at six per cent. There is also a difference in the estimates of value placed upon the property by the company itself at different times. We have stated the values fixed by the experts. The manager of the company,

the same person who was manager when the council appointed a committee to investigate the question of rates and to whom the company referred that committee, appeared before the board of review and there insisted that its value was much less than the company now insists it should have an income upon.

The ordinance was passed January 9, 1905; the bill was filed in this case August 12, 1905; the cause was referred to the master, February 1, 1906, and the master did not make his report of the evidence until June 1, 1908, three years after the ordinance was passed.

It was in the power of the company to have shown exactly what the income and the expenses were during the three years and a half the ordinance was in effect before the evidence was reported to the court, while the company was operating under the ordinance complained of. Such evidence is held to be proper in Knoxville v. Water Co., 212 U. S. 1. The appellee chose rather to rest its case on the theories and speculation of experts when precise proof on the issue involved was within its power to produce. The withholding or failing to produce evidence which, under the circumstances, appellee would be expected to produce, and which was in its power to produce, gives rise to a presumption that the evidence if produced would have shown that the contention of appellee is untenable. Warth v. Loewenstein, 219 Ill. 222; Mantonya v. Reilly, 184 Ill. 183; Hartford Life Ins. Co. v. Sherman, 123 Ill. App. 202.

The books of the company show that during the five years immediately prior to the passage of the ordinance the company had expended $17,826 or an average of $3,575 per year in the extension of mains, and that the income had increased from $9,774 per year to $15,279, or an annual average increase of $1,017. The water supply is taken from Lake Michigan and it does not appear but that the machinery in use is ample for the life of the franchise even if the rate of growth of the city continues as it has in past years. The in-

192    APPELLATE COURTS OF ILLINOIS.

Lake Forest Water Co. v. City of Lake Forest, 154 Ill. App. 184.

crease of expenses has not been as great proportionately as the increase of income. The actual income of the company shown by its books for the year ending May 31, 1904, was $15,279.32 and the operating expenses for the same period were $7,497.57, leaving a profit of $7,781.75.

It is contended by appellant that appellee is estopped to claim that the ordinance is void for the reason that after the passage of the ordinance complained of and the filing of the bill for an injunction, the appellee sued appellant in an action in debt for water rents due from the city under the ordinance. In this suit, appellee claims the ordinance is invalid; in the suit at law begun after the filing of the bill in this suit it relied on the ordinance for a recovery. While the allegations of the bill and the averments in the suit at law are inconsistent, the answer does not plead the suit at law in any way, and there is no cross-bill alleging the acceptance of the ordinance by the beginning of the action of debt. There was no pleading on which to base such a defense (Jenkins v. International Bank, 111 Ill. 462; Hook v. Richeson, 115 Ill. 431; Gorham v. Farson, 119 Ill. 425) and we refrain from expressing any opinion concerning this contention of appellant.

The legislature has conferred upon corporate authorities of cities the power to prescribe by ordinance maximum rates and charges for the supply of water furnished by an individual or company to cities and their inhabitants, and has provided that in case cities shall fix unreasonable and unjust rates, the same may be reviewed and determined by the Circuit Court of the county in which said city may be. Hurd's Statute, chap. 24, sec. 267. This statute has been sustained in the case of the City of Danville v. Danville Water Co., 180 Ill. 241. The city of Lake Forest in enacting the rate ordinance in question was exercising a governmental function delegated to it by the legislature. Courts will not interfere with rates es-

tablished by a legislative body unless they are plainly unreasonable. The presumption is that the rates fixed by the ordinance are fair and reasonable, and the burden was upon the company to overcome this presumption. In the case of City of Chicago v. Rogers Park Water Company, 214 Ill. 212, it was said that the statute conferring the power to fix rates was careful to give with it the command that the rates should be reasonable, for the reason that neither the legislative body nor the municipal authorities could take property without just compensation. ''But it should also be remembered that the judiciary ought not to interfere with the collection of rates established under legislative sanction, unless they are so plainly and palpably unreasonable as to make their enforcement equivalent to the taking of property for public use without such compensation as under all circumstances is just both to the owner and to the public.'' San Diego Land Co. v. Nat. City, 174 U. S. 739; Wilcox v. Consolidated Gas Co., 212 U. S. 19; Knoxville v. Water Co., 212 U. S. 1. The appellee by accepting rights in the public streets of appellant consented to reasonable regulation and became a *quasi*-public corporation. City of Danville v. Danville Water Co., 178 Ill. 319. The city council through its committee acted very deliberately. It consumed months in investigating the rights of the parties and gave the water company every opportunity to appear and demonstrate its rights. The presumption is that the rates fixed by the ordinance are fair and reasonable, and the burden is upon the appellee to show the contrary. C. & A. R. R. Co. v. City of Carlinville, 200 Ill. 314; City of Chicago v. Wilson, 195 Ill. 19; Berry v. City of Chicago, 192 Ill. 154; Rohn v. City of Beardstown, 32 Ill. App. 407.

The record in this case is very voluminous and the great bulk of it gives little information on the issue. The experts agree that the value of the plant at the end of the franchise period will be substantially

194    APPELLATE COURTS OF ILLINOIS.

Lake Forest Water Co. v. City of Lake Forest, 154 Ill. App. 184.

$60,000. It is questionable whether anything can be allowed in the case of the plant of a public service corporation for going value above the tangible elements. City of Knoxville v. Knoxville Water Co., *supra*. The value of the tangible property of the company is fixed by the experts in round numbers at from $85,000 to $95,000 after making deductions for depreciation and without including anything for going value, which is an unknown quantity varying in the judgment of the experts between $2,600 and $26,000. The rates fixed by the ordinance are substantially the same as the rates under which the company operated for four years before the passage of the ordinance. The actual income under rates established by the water company before the passage of the ordinance was for the last year before the adoption of the ordinance $15,279.32 and the operating expenses were $7,497.57. This shows a profit of $7,781.75, which would pay 6% on the actual value of the property and leave $2,000 per year for depreciation and a sinking fund, which placed at interest would fully repay the loss between the present value and the estimated value at the end of the franchise period. The allowance of interest at six per cent on the investment certainly cannot be said to be unreasonably low. Many authorities have held a rate of five or four per cent to be not so low as to justify judicial interference. San Diego Water Co. v. San Diego, 118 Cal. 556; Covington Turnpike Co. v. Sandford, 164 U. S. 578; Brymer v. Butler Water Co., 179 Pa. St. 231.

It is also contended by appellee that although the ordinance in terms gives to the appellee an exclusive franchise for thirty years, yet under the law the city had no right to grant an exclusive franchise, and that the city may grant a new franchise to some other company or build a system of waterworks itself, and that therefore appellee should for self-protection secure a return of its investment and interest before the expiration of the franchise. It is very improbable that

any other company would accept a franchise from appellant with appellee already having a waterworks plant in operation. While the city has no legal right to grant an exclusive franchise, the fact that appellee has a franchise and working plant in a city the size of appellee is in effect the grant of an exclusive franchise, and it is unnecessary to say anything further on that feature of the case.

It does not appear, when all the evidence in the case is considered, that appellee has overcome the presumption that the rates fixed by the ordinance are reasonable; in fact the evidence shows that the rates are reasonable and give a fair and reasonable return to the stockholders. The trial court erred in finding the ordinance to be null and void and in violation of the rights of appellee. The decree is reversed and the cause remanded with directions to dismiss the bill without prejudice to the right of the appellee to file another bill if the actual income derived under the ordinance shall at any time prove to be so inadequate as not to produce a fair and reasonable return.

*Reversed and remanded with directions.*