EDWARD ROBY, Plaintiff in Error, vs. THE SOUTH PARK COMMISSIONERS et al. Defendants in Error.

*Opinion filed December 21, 1911—Rehearing denied Feb. 8, 1912.*

1. PLEADING—*when cross-bill is proper.* Where it is necessary for a defendant to have relief concerning the subject matter of the litigation different from that sought by the complainants, or it is necessary to the defense to obtain some discovery, or where facts occurring subsequently to the filing of an answer are material to the defense, a cross-bill is the proper method of bringing such matters to the attention of the court.

2. SAME—*if matter is equally available by answer a cross-bill is unnecessary.* It is only when complete justice cannot be done on the original bill and answer that a cross-bill is proper, and if the same matter is equally available by answer a cross-bill is unnecessary.

3. SAME—*when demurrer to cross-bill is properly sustained.* A cross-bill filed by a defendant who had refused to join in the original bill though his interest was identical with the interest of the complainant therein, which alleges no facts showing a right to any other relief than that shown by the original bill, or which in any manner adds to, changes or qualifies the relief to be given under the original bill and which prays only for general equitable relief, is unnecessary and is an improper encumbrance of the record, and the court may rightfully strike it from the files or sustain a demurrer thereto.

4. PARTIES—*when a person may be properly made a defendant to bill.* One whose interests are identical with those of the complainant but who refuses to join in the complainant's bill may properly be made a defendant, and if in his judgment the bill does not fully or accurately set out the facts he may supply the defects by answer and introduce evidence on the hearing.

5. SAME—*one who has parted with all interest is not a necessary party to bill to quiet title.* A person who has parted with all interest in land is not a necessary party defendant to a bill against his grantees and others for purpose of quieting title to the land.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

On August 17, 1905, Charles W. Colehour filed a bill in the superior court of Cook county against the South Park Commissioners, Edward Roby, Carrie M. Colehour

and Azel F. Hatch. The bill was amended, additional parties were made, Hatch died and his administrator was substituted in his place. The defendants answered and the cause was put at issue by the filing of replications. On June 24, 1908, Edward Roby filed a cross-bill, to which a demurrer by the South Park Commissioners was sustained on July 2. Roby elected to stand by his cross-bill and it was dismissed, and after a hearing on the pleadings and evidence the original bill was also dismissed for want of equity on July 22, 1908. Separate appeals were prayed by complainant and by Edward Roby, but they were not perfected and no certificate of evidence was filed. On April 10, 1911, Edward Roby sued out a writ of error to reverse the decree.

The material averments of the original bill charge, substantially, that the complainant, Carrie M. Colehour and Edward Roby are the equitable owners of a tract of land in the east half of section 8, town 37, range 15, east, in Cook county, bordering on Lake Michigan, the legal title to which is in Carrie M. Colehour, the complainant being the owner of one-half and Carrie M. Colehour and Edward Roby each of one-fourth; that the South Park Commissioners on July 1, 1904, obtained a conveyance of a tract of land in the same section north of and adjoining the land of the complainant and his co-tenants and are in possession of the same; that the north line of the land of the complainant and his co-tenants, beginning at the intersection of the Lake Shore and Michigan Southern railroad with the south line of the north half of section 8, runs north 33 degrees and 30 minutes east to Lake Michigan, while the south line of the land described in the deed to the South Park Commissioners, beginning at the same point, runs at right angles to the railroad, so that the description contained in the deed covers a triangular piece of about three acres included between these two lines and the lake, which belongs to the complainant and his co-tenants and thus constitutes a cloud on their title.

It was also alleged that by reason of the joint efforts of the complainant and his co-tenants and of Esther E. Taylor, a former owner of the tract conveyed to the South Park Commissioners, for the improvement of the property of all of them, and for the making of all parts of said section 8 available for settlement and for residences and places of industry, commerce and profit, and by reason of their subdivision of their lands and platting the same, their general plan of improvements and of their agreements and many acts in pursuance thereof, the lands of the complainant and his co-tenants are only accessible by pedestrians and vehicles through the streets included within the land conveyed to the South Park Commissioners and they are accessible by land in no other way, and for all these reasons the said Esther E. Taylor became estopped to deny the right of complainant and his co-tenants to use all of said streets, yet the South Park Commissioners threaten to convert into a park all the land so conveyed to them, including all the streets therein, and to exclude therefrom all traffic teams and vehicles and all vehicles not within the description of pleasure vehicles, and are now at work, by their servants, with teams, wagons, scrapers and other appliances, closing and obstructing said streets.

It is further alleged that the United States has been engaged in building an artificial harbor off the mouth of the Calumet river, and that the lands of complainant and his co-tenants are within said harbor and front about 1600 feet on the waters thereof; that a dock line has been established by the United States substantially parallel to the shore line and about 2300 feet therefrom, and the right to construct and use docks and piers to that line, and all other riparian rights appurtenant to the said land, are the property of the complainant and his co-tenants, yet the South Park Commissioners claim that an act of the legislature approved on May 14, 1903, entitled "An act conveying certain lands to

252 — 37

the South Park Commissioners for the purpose of establishing public parks and pleasure grounds therein," is a grant of all the land covered with water between the land of the complainant and his co-tenants in section 8 and the State line of Indiana, and cuts off and divests all rights of the complainant and his co-tenants to any riparian rights in Lake Michigan and the land under the lake, and especially the right to fill or dock out to the depth of navigable water, and the South Park Commissioners threaten to build out from the land of the complainant and his co-tenants to the State line of Indiana and to occupy the water between such land and said State line, and to exclude the complainant and his co-tenants from building docks out into the water to the dock line and from using their riparian rights in any manner, though the complainant avers that the said act of the legislature is null and void. The bill also averred that the tract conveyed to the South Park Commissioners is not adjacent to any park or boulevard and that the South Park Commissioners are without authority of law to maintain said premises as a park.

The amendment to the bill introduces two new parties, Homer Potwin and Kate N. Harris, and avers that on August 19, 1903, the National Transit Company entered into a written contract to convey to Homer Potwin the land subsequently conveyed to the South Park Commissioners, and September 23, 1896, entered into a like contract with H. Prentiss Putnam, who later assigned it to Charles G. Harris, of whose will Kate N. Harris is executrix. It was averred that Roby and Carrie M. Colehour, the co-tenants of the complainant, refused to join in the bill as complainants and they were therefore made defendants. It was further alleged that Azel F. Hatch held title to the lands described in the east half of section 8, such title to be conveyed and delivered to the complainant, as sole owner, on the payment of $8000 and accrued interest.

The prayer of the bill was that the title of the complainant and his co-tenants up to the north boundary line claimed by them, including the three-acre triangle, might be quieted; that the title of the complainant to the land covered by water in front of their land in section 8, and to all the riparian rights mentioned appurtenant to the said land, might be quieted; that the South Park Commissioners might be restrained from converting the streets in the tract conveyed to that corporation into a park, from filling up, obstructing or vacating the said streets or any of them, from excluding traffic teams or vehicles from them or any teams or vehicles from going to or from the said land of the complainant and his co-tenants, or from in any manner obstructing or interfering with the use by the complainant and his co-tenants of their said land covered with water and from the exercise of every riparian right appurtenant to said land, and for general relief.

Before the amendment to the bill making Potwin and Harris parties, Roby filed his answer on September 26, 1905, expressly admitting all the allegations of the bill except that alleging Azel F. Hatch's title, which he denied, claiming the ownership of one-fourth of all of the said lands in equity, free from all claims of said Hatch against Charles W. Colehour or of his co-tenants. Carrie M. Colehour's answer expressly admitted all the allegations of the bill except that in regard to Azel F. Hatch's title, which she denied, claimed the ownership of one-fourth of the land in equity, and united in the prayer of the bill for relief against the South Park Commissioners. The answer of Azel F. Hatch's administrator, filed April 17, 1907, set up the title held by him as security for an indebtedness of Charles W. Colehour. The answers of Potwin and Harris set up the respective contracts alleged in the amendment to the bill, allege that they are in full force, and that the South Park Commissioners had notice of them when the conveyance was received from the National Transit Company.

The answer of the South Park Commissioners denied that the line between the two tracts ran from the starting point north 33 degrees and 30 minutes east and averred that it ran at right angles to the railroad, and that for more than twenty years the latter line had been marked by a fence and pier and had been acquiesced in by the owners on either side as the true division line; denied that the lands of the complainant and his co-tenants were only accessible for pedestrians and vehicles over the streets on the tract of the South Park Commissioners, and averred that in 1888 those streets were duly vacated in conformity with the statutes and the rights of the public therein ceased; that afterward, on May 5, 1888, the said tract was conveyed by the owner thereof to the National Transit Company, and from that time until the date of its deed to the South Park Commissioners, July 1, 1904, the National Transit Company had been continuously in the open, adverse, exclusive, and notorious possession of all of said premises, had paid all taxes levied thereon, and had maintained a fence on the boundary line at right angles to the railroad; that the South Park Commissioners had no knowledge of any of the acts or agreements which were claimed to estop Esther E. Taylor, and that none of such agreements were in writing or recorded. The answer admitted that the South Park Commissioners intended to convert all the lands it had acquired or might acquire into a park, but averred that it had not yet been determined in what manner the said lands should be improved, and it denied that the South Park Commissioners had threatened to build out in front of the lands of the complainant and his co-tenants in section 8, or to occupy the water between said lands and the State line of Indiana, or to exclude the complainant and his co-tenants from building docks out to the dock line of the harbor or from using their alleged riparian rights. In its answer to the amendment to the bill the South Park Commissioners set up a forfeiture of each of the contracts mentioned.

The cross-bill of Roby adopted all of the allegations of the original bill and amendments except the averment of the mortgage to Hatch. It then proceeded to describe, in great detail, the boundary line between Illinois and Indiana, the location of the dock line, the sea wall, the harbor, the frontage of the land in question on Lake Michigan and the riparian rights claimed. The chain of title to fractional section 8 was then set out substantially according to the allegations of the original bill but in very much greater detail, including several plats of the land, conveyances thereunder and the rights claimed to have been acquired by the different parties. Certain proceedings by the South Park Commissioners for condemning the land as the property of the National Transit Company, prior to the execution of the deed by the company, were set out, together with the subsequent dismissal of that suit, and the deed from the National Transit Company to the South Park Commissioners. The contracts with Putnam and Potwin were alleged as in full force and notice of them by the South Park Commissioners prior to the purchase of the land. The National Transit Company was made a party defendant. The cross-bill prayed for no specific relief but only for such relief as might be agreeable to equity.

EDWARD ROBY, *pro se.*

ROBERT REDFIELD, (TOLMAN & REDFIELD, HENRY P. CHANDLER, CHARLES L. BARTLETT, and CHAUNCEY W. MARTYN, of counsel,) for defendants in error the South Park Commissioners.

ALFRED D. EDDY, for the National Transit Company.

Mr. JUSTICE DUNN delivered the opinion of the court:

The only error assigned is on the action of the court in sustaining the demurrer to the cross-bill and dismissing the cross-bill. The cause has been argued on the part of the

plaintiff in error as if the cross-bill were an original bill and as if the only question to be determined were whether the cross-bill states such a case as entitles the complainant to some equitable relief. This is a misapprehension. The record shows that after the cross-bill was dismissed the cause was submitted for final hearing upon the original bill, (to which the plaintiff in error, having refused to join as complainant, was a defendant,) the answers and replications and the evidence, and upon a determination of the issues of fact as well as of law the court entered a decree dismissing the bill for want of equity. That bill, so far as any right to equitable relief is concerned, was substantially identical with the cross-bill. The allegations of the latter were made in some particulars with more fullness of detail, but in no material matter did they add anything of essential importance to the statements of the original bill. The cross-bill prayed for no relief not prayed for by the original bill, and, in fact, for no specific relief. Its prayer was merely a prayer for general equitable relief. The facts alleged showed no right to any other relief than that shown by the original bill. They showed nothing which could in any manner add to, change or qualify the relief to be given under the original bill. Under such circumstances the cross-bill was an unnecessary and improper encumbrance of the record, and the court might rightfully strike it from the files or sustain a demurrer to it.

A cross-bill is a mode of defense. Where it is necessary for a defendant to have relief concerning the subject matter of the litigation different from that sought by the complainants, where it is necessary to the defense to obtain some discovery or where facts occurring subsequently to the filing of an answer are material to the defense, a cross-bill is the proper method of bringing these matters to the attention of the court. It is only where complete justice can not be done on the original bill and answer that a cross-bill is proper. If the same matter is equally available by way

of answer the cross-bill is unnecessary. In *Newberry* v. *Blatchford,* 106 Ill. 584, the Attorney General, who was a defendant, filed an answer substantially admitting the allegations of the bill and a cross-bill asking the same relief as the original bill. It was held that the cross-bill was filed in violation of the well established chancery practice. The court said (p. 599): "The cross-bill in this case was for no purpose the law permits such a bill to be used. No discovery was sought and no relief was asked that was not attainable, if at all, on his answer. This is stating no new rule of practice. It was decided by this court as long ago as in *Morgan* v. *Smith,* 11 Ill. 194, a defendant will not be permitted to file a cross-bill when his rights are fully disclosed in his answer in response to the allegations of the bill and might be fully protected by the court on the hearing of the original bill, and the cross-bill of the defendant was held to have been properly stricken out of the record because it was in violation of proper practice. * * * It is not understood the practice in chancery will permit a defendant to file a cross-bill praying the same thing may be done as is sought to be accomplished by the original bill. A demurrer would lie to such a cross-bill, or it might be dismissed on motion, as was done in *Morgan* v. *Smith.*" The same rule is announced in *Wing* v. *Goodman,* 75 Ill. 159; *Akin* v. *Cassiday,* 105 id. 22; *Hook* v. *Richeson,* 115 id. 431; *Prichard* v. *Littlejohn,* 128 id. 123.

Though the interest of the plaintiff in error was identical with that of the complainant he refused to join in the bill and was therefore properly joined as a defendant. (*Smith* v. *Sackett,* 5 Gilm. 534; *Whitney* v. *Mayo,* 15 Ill. 251.) If in his judgment the bill failed to set out the facts with sufficient fullness or accuracy he could have supplied the defects by his answer. He had the right, on the hearing, to introduce evidence, and if, upon the hearing, relief had been granted to the complainant, the plaintiff in error would necessarily have received the same relief.

The presence of the National Transit Company was not necessary to the relief sought. It had no interest in the controversy. It had parted with its interest in the land. The allegations of the cross-bill show that the only persons having any interest in the land were Roby, Charles W. Colehour, Carrie M. Colehour, the South Park Commissioners, Potwin and Harris. These were all parties to the original bill, and the presence of no one else was necessary to an adjudication of all questions concerning the title.

The demurrer to the cross-bill was properly sustained, and the decree will be affirmed.    *Decree affirmed.*