Ray W. Johnson, Executor of the Last Will and Testament of Elizabeth M. Walker, Deceased, and Ray W. Johnson, Individually, Defendants in Error, v. Horace L. Brand, Plaintiff in Error.

Gen. No. 34,498.

Heard in the first division of this court for the first district at the October term, 1930. Opinion filed December 22, 1930.

CHESTER D. KERN, for plaintiff in error.

CUTTING, MOORE & SIDLEY, for defendants in error; PHILIP H. SCHOFIELD, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

By this writ of error defendant Brand seeks to reverse a decree in equity granting relief as prayed in a bill filed by Elizabeth M. Walker, who died pending the suit and whose executor was thereupon substituted. The cause was heard upon exceptions to the report of a master, the exceptions were sustained and a decree was entered with special findings as to the facts.

The bill was filed November 5, 1923, and in substance averred that on April 21, 1919, defendant Brand by indenture leased to complainant, Elizabeth M. Walker, certain premises in the city of Chicago for a term of three years beginning on May 1, 1919, and ending on April 30, 1922; that for the purpose of securing the payment of rent to defendant, complainant on the same day assigned and set over all her right, title and interest in certain real estate situated in Howell county, Missouri, as security for the performance of the covenants of the lease, defendant agreeing that upon the performance of such covenants he would release and surrender the rights thereby conveyed; that complainant had performed the covenants, paid the rent and ceased to occupy the premises, but that defendant refused to release the interest conveyed as security, claiming that complainant was indebted to him.

The bill also averred that in truth defendant was indebted to complainant for divers sums of money, which she expended in the years 1919 to 1921 in the

payment of taxes on the demised premises to the treasurer of Cook county at the special instance and request of defendant, but which she was not in fact obligated to pay; that defendant refused to reimburse her therefor; that complainant offered to pay any sum found to be due and payable by her, and prayed that defendant might be decreed specifically to perform the agreement and to execute and deliver a full and complete release, and for general relief.

The answer of defendant admitted the execution of the lease and the agreement, but denied that complainant had faithfully performed the covenants of the lease; admitted that she ceased to occupy the premises and that he has refused to release to complainant the interest acquired as security under the agreement; denied that he refused to comply with the agreement but stated that complainant was still indebted to him. The answer further denied that defendant was indebted to complainant for money advanced in the years 1919 to 1921 for taxes, and admitted that he refused to reimburse complainant for the same.

Defendant further averred that in the drawing up of the lease ''by mistake, error, and misprision of the scrivener, the word 'Lessor' was used in place of the word 'Lessee,' '' so that the said lease read that the Lessor agreed to pay the taxes on said premises, whereas in truth and in fact the agreement between this defendant and said complainant contemplated the payment by said complainant lessee of all taxes levied or imposed on said premises during the period of said lease, and that the said agreement for the payment of taxes by said complainant was part of the consideration of said lease and the term thereby granted, and that ''in pursuance of such agreement the said complainant did pay certain taxes upon said premises during the term of said lease, but that said complainant has failed and neglected to pay all the taxes due thereon during the term of said lease.''

It is also averred in the answer that defendant was obliged to commence an action in forcible detainer against complainant to obtain possession of the premises; that the premises were turned over to defendant by complainant in a ruinous and dilapidated condition, although the lease provided that they should be delivered in as good order and repair as when received; that complainant agreed to pay all sums expended or incurred by defendant in enforcing the covenants of the lease, including reasonable solicitor's fees, and that by reason of the proceedings in forcible detainer complainant became and was liable for the sum of $200 for attorney's fees, $15 for stenographer's fees, and $8 for court costs. Defendant further answered that he was ready and willing at any time to reconvey the premises held by him when the indebtedness due from complainant to defendant was fully paid.

The cause was referred to a master who took the evidence and reported as to the making of the lease and of the agreement for security. The master found that Mrs. Walker, complainant, entered into possession of the premises and paid the general taxes for 1919 amounting to $674.77, the general taxes for 1920 amounting to $707.57, and the general taxes for 1921 amounting to $968.81; that on June 26, 1922, defendant brought a suit in forcible detainer against her to obtain possession of the demised premises and obtained judgment for possession and costs; that Mrs. Walker remained in possession until the last part of September, 1922, and then moved out, leaving the premises in bad condition; that she paid to defendant the $2,900 a year rent during the period from May 1, 1919, to April 30, 1922, and in addition, $800.

The master found that the word "lessor" instead of the word "lessee" was inserted in the lease by mistake in the clause relating to the payment of taxes; that Mrs. Walker was an intelligent woman and was not deceived in any way by Brand; that she agreed to pay

the taxes on the demised premises and that she was not entitled to recover the same.

In the 20th paragraph of his report the master found as a matter of law that Brand could avail himself of the defense that the word "lessor" was inserted in the lease by mistake, on his answer without a cross-bill.

Although the master found that Mrs. Walker received the premises in good repair and left them in bad repair, he found that the evidence as to the amount of damage was little more than a guess and not specific enough on which to base a finding; that defendant was not entitled to recover any damages on that account; that the usual fee for Brand's attorney in the forcible detainer suit was $100, that the court costs incurred were $3, and that Mrs. Walker was liable to defendant for $408.30 for rent, making a total sum of $511.30 due from complainant to defendant. The master recommended that a decree be entered that Brand release and reconvey the Missouri land to complainant upon the payment by her of that amount.

The decree entered by the court sustaining exceptions of complainant to the report of the master found that by the terms of the lease Brand promised and agreed to pay the general taxes levied against the demised premises for the years 1919, 1920 and 1921; that he failed to do this; that such taxes amounting to $2,351.15 were paid by Mrs. Walker at defendant's request; that defendant has not reimbursed complainant or her executor for these payments; that there was a balance due to defendant Brand on account of the use and occupation of the premises, costs, attorney's fees, and expenses of the forcible detainer suit amounting to $511.30 (the same as found by the master) and leaving a balance due to the estate of Elizabeth M. Walker of $1,839.85. It was adjudged and decreed that defendant pay that sum to the executor and deliver a deed conveying to Ray W. Johnson, the devisee

named in the will of Mrs. Walker, the property conveyed under the security agreement.

Defendant contends that he could properly set up the mistake made in the lease by way of defense in his answer without filing a cross-bill; that the finding of facts as made by the master is prima facie correct; that the money paid by Mrs. Walker for taxes was paid voluntarily and could not be recovered and that in decreeing specific performance of defendant's agreement to reconvey the property, defendant should not have been required to execute the deed without reimbursement for the amount found by the master to be due to defendant from complainant.

An examination of the evidence leaves us without any doubt whatever that it was the intention of the parties to the lease that Mrs. Walker should pay the taxes on the premises, and that the word "lessor" instead of "lessee" appears in the paragraph with reference to the payment of taxes through a mistake of the scrivener who wrote the lease. There are several facts which compel that conclusion. In the first place, defendant Brand was primarily obligated to pay the taxes on the premises. There would be no reason for inserting a clause to impose that obligation upon him, and it would be unusual and senseless to do so. In the second place, the fact that Mrs. Walker paid these taxes when requested to do so by Brand without any protest indicates that she was not wholly relying upon his word but that she complied with what she understood and knew was her obligation. In the third place, her predecessor lessee, a Miss Hill, pursuant to the provisions of her lease, had paid similar taxes on the premises. Mrs. Walker talked with Miss Hill before renting the premises, and when asked if Miss Hill had told her how much the lease called for, she replied that Miss Hill had told her what she (Miss Hill) was paying. In the fourth place, defendant's positive testimony to conversations with Mrs. Walker

in which she admitted this liability is corroborated by the testimony of another witness, who at that time was acting as the attorney for defendant, while Mrs. Walker's explanations and denials are altogether weak and evasive. We shall not discuss the testimony further than to say that as a result of our examination of it we have no doubt that the word "lessor" was written by mistake in the paragraph in question although the word "lessee" was intended by the parties.

It seems to have been the theory of the trial court (and complainant argues in his brief here) that defendant was not entitled to offer evidence tending to establish this defense under his answer in the absence of a cross-bill having been filed, and complainant relies on *Roby v. South Park Com'rs,* 252 Ill. 575, and *Daly v. Daly,* 299 Ill. 268, as tending to sustain this contention. In considering this point, defendant undertakes to distinguish between the agreement entered into for the reconveyance of the land and the lease. They were, however, executed by the same parties, on the same day and concerned the same subject matter. It is undoubtedly the law, and these cases cited hold that as a general rule affirmative relief cannot be granted on a mere answer to a bill in equity and that the answer can be used only for purposes of defense. However, defendant here is not seeking affirmative relief. He seeks to defeat complainant's bill by the interposition of his defense. He does not ask and the master does not recommend that the agreement and lease upon which complainant bases her suit shall be delivered up and cancelled or reformed. If such relief were sought complainant's point would be well taken. In Story's Equity Pleadings, 9th ed., sec. 391, p. 339, that author says:

"The latter case (a cross-bill for relief) may occur, when the original bill is brought for the specific performance of a written contract, which the defendant

at the same time insists ought to be delivered up or cancelled. Under the original bill no such relief could be had; and, even if the plaintiff should fail in obtaining a decree under his original bill for a specific performance of the contract, he might, notwithstanding, afterwards bring his action at law for damage sustained by him by the non-performance. It may, therefore, *be necessary for the defendant, in order to his protection against any such harassing suits, to file a cross-bill for the purpose of having the contract delivered up or cancelled.*"

In our opinion the question is settled in *Ballance v. Underhill,* 3 Scam. 453. That is a case in which complainant filed a bill in equity for the purpose of enforcing the specific performance of an award which had been made by arbitrators. Defendants filed an answer and for the purpose of defeating the relief sought, set up that there had been a mistake of fact made in the preparation of the award. The court said:

"It is perhaps hardly necessary to cite authorities to prove that courts of chancery have uniformly exercised the power of correcting mistakes, not only in simple contracts, but in bonds, deeds and other specialties, whether the application is made to the court merely for the purpose of rectifying the mistakes, so that the parties may assert their legal rights under the agreement, when corrected, or whether the application is made for the double purpose of rectifying the mistakes, and then enforcing a specific performance of the agreement; but also where the complainant seeks a specific performance of a contract, in which a mistake has occurred, and *the defendant sets up the mistake by way of defence.*"

The opinion in that case points out that in *Gillespie v. Moon,* 2 Johns. Ch. Rep. 585, where the right of a complainant to have a mistake in the description of a deed reformed upon oral testimony was questioned,

Chancellor Kent decided in the affirmative after reviewing the cases and concluded that the mistake might be shown by parol proof and the relief granted to the injured party ''whether he sets up the matter affirmatively by bill, or as a defence.'' Chancellor Kent further stated that there were numerous instances in which the plaintiff had claimed and obtained relief by showing a mistake in the agreement and that there would be ''a most deplorable failure of justice if the mistakes could only be shown and corrected *when set up by a defendant to rebut an equity.*''

In the later case of *Kisselbrock v. Livingston,* 4 Johns. Ch. Rep. 145, in which a bill for the specific performance of an agreement was considered and a mistake was averred, Chancellor Kent stated:

''Indeed, by looking into the cases on this subject (and they are very abundant), it will be seen that the authority of the court to rectify a mistake in an agreement, and then enforce a specific performance of it in the same suit, was questioned long after it was settled, beyond controversy, *that a mistake might be set up to defeat the equity of the bill.*''

We find nothing to the contrary in the cases cited by complainant. In *Roby v. South Park Com'rs, supra,* the court said:

''A cross-bill is a mode of defense. Where it is necessary for a defendant to have relief concerning the subject matter of the litigation different from that sought by the complainants, where it is necessary to the defense to obtain some discovery or where facts occurring subsequently to the filing of an answer are material to the defense, a cross-bill is the proper method of bringing these matters to the attention of the court. It is only where complete justice cannot be done on the original bill and answer that a cross-bill is proper. If the same matter is equally available by way of answer the cross-bill is unnecessary.''

In *Daly v. Daly,* already cited, our Supreme Court said:

"The rule is, that where a defendant relies on his answer, alone, he can only use the equity of his case for the purposes of defense, but if he wishes to become the assailant and seek affirmative relief with reference to the subject matter of the original bill he must file his cross-bill, and in this way, and this way alone, is he permitted to use his equity as a weapon of attack. (Puterbaugh's Ch. Pl. & Pr.—6th ed.—370, 371; *Hamalle v. Lebensberger,* 267 Ill. 602.)"

Our conclusion is that the defendant here could show by way of defense the mistake made in the execution of the lease without filing a cross-bill. Indeed it was not necessary to show that the mistake was mutual to sustain the defense. *Krabbenhoft v. Gossau,* 337 Ill. 396. It follows that the court erred in sustaining exceptions to the master's report. The decree of the circuit court is therefore reversed and the cause is remanded with directions to approve the master's report and to enter a decree in conformity with its recommendations.

*Reversed and remanded with directions.*

McSurely and O'Connor, JJ., concur.